## Hitchcock *versus* Hitchcock.

Though a will speaks for some purposes from the period of execution, and for others, from the death of the testator, yet it never operates until the latter period; and therefore, where a testator, by his will, expressed his intention to dispose of the bulk of his estate by notes and deeds, and after certain specific bequests to his wife, gave a pecuniary legacy to one granddaughter, who, he declared, should have only the sum so bequeathed to her; but died without making any other disposition of his property; it was *held*, that he died intestate as to the property not·specifically bequeathed, and that the same descended to his heirs at law, including his said granddaughter.

An estate owned by the testator at the date of his will, will not pass under it, where the intent is clearly expressed that it shall not, but shall be reserved for future disposition by deeds and notes.

Where, in a will, there is a general intent, and also a particular one, and these are inconsistent with each other, the particular is to be sacrificed to the general intent.

Merely negative words are not sufficient to exclude the title of the heir or next of kin; there must be an actual gift to some other definite object.

ERROR to the Common Pleas of *Luzerne county.*

This was an ejectment by Celinda Ann Hitchcock, by her guardian L. D. Shoemaker, against Ebenezer Hitchcock, for three acres of land, or thereabouts, in Scranton, Luzerne county.

The parties agreed upon a case stated, in the nature of a special verdict, in which the following facts were submitted for the opinion of the court :—

Elisha Hitchcock, Sr., died seised of the premises in question, having first made the following will, on the 30th July 1857, which was duly proved after his decease.

"I, Elisha Hitchcock, of Scranton, in the county of Luzerne and state of Pennsylvania, being now in health, and of sound and disposing mind and memory, do make and publish this, my last will and testament, in manner following :—The notes and deeds which shall be found executed by me, and in possession of any of my children at my decease, must be regarded, not as advancements, but as given in payment of past claims upon me, for services, &c., rendered; and therefore I direct that after the payment of my funeral expenses and just debts, including said notes, all my remaining real and personal estate shall be disposed of as follows :—

"1st. I give and bequeath to my well-beloved wife, such articles as she shall choose to select for her own use and comfort, of all my goods or household furniture, cows, implements, and the like, which she may want; and the property thus selected by her is to be her own, and at her disposal, but this bequest is not to include any of the debts or money due me.

"2d. I also give and devise to my said wife, if she·shall outlive me, the homestead or mansion where we now reside, and so much as shall be left of its lot appurtenant, bounded in front by Mon-

roe avenue, northerly by land formerly Mr. Hornbeck's; easterly by a laid-out alley, and southerly by Vine street, the same to belong to my said wife in fee simple, to be devised or disposed of by her as she shall think best.

"3d. I also bequeath to my said wife, if living at my decease, the use of five thousand dollars of the money due me, or coming due in the last instalment of the mortgage of the Hon. George Sanderson to me, recorded in the recorder's office in and for the county of Luzerne; the interest thereof to be paid to her by my executor, or by the debtor, during her natural life; and the said five thousand dollars, at her decease, is to be divided equally among my heirs, with the exception or exclusion of my granddaughter, Celinda Ann, who will be otherwise provided for. If the said five thousand dollars shall be paid or collected before the decease of my said wife, it is to be reinvested by my executor, with the approval of my wife as to the kind of investment, as safely and productively as he can; the interest or income thereof to be still paid to my wife as aforesaid, and the property itself, or principal, to be divided as aforesaid at her decease.

"4th. I also bequeath to my said granddaughter, Celinda Ann Hitchcock, two thousand dollars of the same last instalment of said mortgage, and the interest to accrue upon the said two thousand dollars from the first day of May next, to be received by her guardian or collected by him, and to be disposed of by him judiciously for her use, unless I shall receive and dispose of said interest for her during my lifetime. If she shall arrive at the age of eighteen, it shall be her right to receive the said two thousand dollars and interest, independent of her guardian and of her husband, if she shall then have any, and to hold the same under her own power and control, according to the laws of Pennsylvania, even if she shall then reside in another state; but, if she shall die before she arrives at the age of eighteen, and without a child or children living at her decease, then the said two thousand dollars are to revert to my heirs aforesaid, to be equally divided between them by my executor, if he shall be living and holding letters testamentary; if not, to be collected and divided by my heirs aforesaid themselves; and it is further my will, that in case any of my children shall die leaving children living at my decease, said children shall receive the same share of my estate which their parents would have done, if he or she had been living; but I bequeath to my said granddaughter, Celinda Ann, only the said two thousand dollars and interest, not because of unkindness towards her, but because I know that she is the only child of my deceased son, and as such inherits all his estate, while my other grandchildren, who may be left orphans, may not be so well off.

"Lastly, I desire that the furniture, &c., which my said wife may select for herself, as herein provided, may not be appraised;

[Hitchcock v. Hitchcock.]

and I also, by these presents, nominate and appoint my son, Ebenezer Hitchcock, to be my executor of this my last will and testament; he to receive out of my estate, devisable as aforesaid, a reasonable sum as a compensation for his expenses and services in executing the same. In witness whereof, I have hereunto set my hand and seal, and publish and declare the foregoing to be my last will and testament in the presence of my chosen witnesses.

"ELISHA HITCHCOCK." [L. S.]

Elisha Hitchcock, Sr., left a widow Ruth Hitchcock, and the following children: Ebenezer Hitchcock, the defendant; Zenos Hitchcock, Sarah Gardner, Ruth A. Clemens, Mary Heath, and a grandchild Celinda Ann Hitchcock, the plaintiff, who was the only child of Elisha Hitchcock, Jr., a deceased son of the testator. Elisha Hitchcock, Sr., died without having made any other disposition of his property than that contained in the foregoing will. And the plaintiff claimed that he died intestate as to the property not specifically bequeathed, and that she, as one of his heirs at law was entitled to an undivided sixth part thereof.

The court below gave judgment for the plaintiff on the case stated, and delivered the following opinion:—

"It is manifest, from the introductory clause in the will, that the testator did not intend to dispose of all his estate by his will, but that deeds and notes had been or were to be given to his children, fixing their individual rights in portions of his estate, and that the will was only to operate on his '*remaining real and personal estate.*'

"The necessary inference then is, that, while he disposed of a portion of his property by will, it was his intention, during the time life should still be extended to him, to arrange the disposition of other portions of it. The intention how among his children he should dispose of it, was left incomplete, even if then known to himself, at the time he made his will, and not perfected, as the will states, at his death, by his leaving real estate of which he died intestate. He never did carry this intention into effect, though he lived a year and two months after making his will, but for some reason only known to himself, did not give to his children deeds and notes covering all the estate undisposed of by will, but died leaving it apparently to descend under the statutes. If there had been in his will a clear and definite intent expressed as to one of his heirs, referring in the same will to the means and mode by which he proposed to dispose of afterwards other portions of his property, such disposition being merely in embryo and liable to change, and he dying without perfecting this disposition in the way he proposed, or in any other way, but leaving the property to descend under the intestate laws, would a court be justified in saying that when he thus refrained from perfecting his proposed disposition of property among his other descendants,

[Hitchcock *v.* Hitchcock.]

leaving undone that which he had full opportunity to do, if his intention had not changed, they would carry out this original intention, partially expressed in a will, in defiance of this apparent alteration of his views? The intent expressed in the will as to the grandchild, if it has reference to other estate, is merely correlative to the thought and intent then in the mind of the testator, that his other property should go to his other children by deeds and notes, to be given in payment of their claims upon him for services rendered, and not by devise or bequest.

"If these claims are tangible, they are still, it is to be presumed, recoverable in the proper proportions due to each child, though the testator neglected to settle them in his lifetime, without demanding that the whole undevised estate shall descend to them in equal proportions.

"A man may, by gift or will, desire to transfer his property as he pleases, but until he executes the deeds of gift, or has passed the moment when his understanding will no longer permit him to change his will, his intention is still within his own power. Giving then the full meaning to the language used in the will, as claimed by the defendant, what does it amount to but that the testator intended no more of his property for his grandchild, because, as to the rest of it, he proposed himself to distribute it in such proportions as he judged the previous claims of his other children deserved, and which his conduct afterwards showed that he either thought they did not deserve, or that he would not thus remunerate them. Does it follow that his children *alone*, exclusive of the grandchild, are to take the property contrary to the descent provided by the statutes, when he must have known that so far as its descendible character it must descend to all; in other words, that because he once intended to divide it, or rather make it available to his children according to his own opinion of right, but concluded not or neglected to do so, the law must now be prevented from dividing it according to its rule of division?

"But again, what does the will say? We have already stated that it refers only to a certain portion of his estate remaining for distribution after his proposed disposition of other portions by himself, but which disposition he never carried into effect. He devises and bequeaths to his wife real and personal property, and then gives to her the interest of $5000 for her life. This $5000, after her death, to be divided equally among his heirs, with the exclusion of his granddaughter, the plaintiff, 'who will be otherwise provided for." Then he gives to this granddaughter, in substance, the interest of $2000 from the 10th of May 1858, to be paid for her support, and if she lives to the age of eighteen, the principal sum of $2000; but if she dies before that age without leaving any child, said sum to be divided equally among his heirs. There is also provision that if any of his children shall

[Hitchcock *v.* Hitchcock.]

die before him, leaving children, such children shall take the share of the parent; and he finally states the reason why he only leaves his granddaughter the sum of $2000 and interest. Thus disposing of a certain portion of his estate under the will, he gives to his other children, absolutely, after the death of their mother, the $5000 bequeathed to her for life, and the $2000 given to his granddaughter, if she die childless before eighteen. To this granddaughter he makes the conditional bequest of $2000 and the interest, from the 10th of May 1858, he reserving to himself the right to dispose of such interest for her, during his lifetime. Looking to the claims under the will, the circumstances of the age of the granddaughter, and the contingent nature of a bequest to her, and the age of the grandmother, at whose death the other children immediately become entitled to their portions of the $5000, it may be considered questionable whether the bequest to the grandchild or that to either one of the children is the most valuable and desirable.

" Under the view of the case we have taken, is there in the will such a clear and manifest expression of intention as will take away the rights of the plaintiff, one of the heirs at law of the decedent, in the land not devised to any one, and as to which the decedent died intestate?

" It is a maxim, says Judge ROGERS, in Bender *v.* Detrick, 7 *W. & S.* 287, which applies here as well as in England, that an heir at law can only be disinherited by express devise or necessary implication, and that implication has been defined, ' such strong probability that an intention to the contrary cannot be supposed.' Applying this rule to the present case, how do we find it?

" There is here no devise over of the land, and no implied disposition of it by the testator, contrary to the mode in which the law would dispose of it. There is a recital of an intention in the testator to dispose of other property, either by deeds or notes, which would be payable out of it, perhaps he may have thought to the extent in value of such other property, to the exclusion of his grandchild, but this he did not, for reasons best known to himself, carry into effect. How then can we, for there are no words expressly doing so, say that by necessary implication he intended to divest one of his heirs at law, when he neglected to effectuate his previous intention, or designate, after the will was made, how his remaining property should be disposed of, but permitted himself thus to die, knowing that by law all his undisposed-of estate would equally descend to his heirs, including the one now alleged to be excluded? Suppose it be admitted that, at the time he made his will, he did intend to exclude her, when afterwards he omitted doing in relation to his other property what it must be equally

[Hitchcock *v.* Hitchcock.]

implied was his intention then to do, and up to the time of his death, when his will became operative and his undivided estate descended, there was nothing to confirm that intention, but, in the very absence of action on his part, much to induce us to believe that his intention with regard to such property had changed, who can say there is a necessary implication that the grandchild was disinherited as to property not passing under the will? We would here refer to Stickle's Appeal, 5 *Casey* 236, as to construing the language of a will. If, where there are two inconsistent clauses in a will, the latter is to prevail as the latest manifestation of the will of a testator, countenancing even an apparent change of intention, how much more readily may we discover, under the circumstances found in the present case, such a change of the intention which he may have had when he made his will, by his refusal to make the deeds, &c., disposing of his property as he there proposed to do, leaving it to the contrary of this, to descend equally to all his heirs?

"The language of the will applies to the property disposed of by the will, and there is sufficient in the bequest to the grandchild to show that she can have no interest in any portion of it, except to the extent of her definite and conditional bequest; but we cannot say that, under the circumstances shown here, with no devise over, either expressly or by implication, to any other person, she, as one of the heirs at law, is excluded from her share in the lands now claimed, which the law, irrespective of the will, gives to her. Judgment for the plaintiff."

The defendant, thereupon, sued out this writ, and here assigned for error, that the court below erred in giving judgment for the plaintiff on the case stated.

*Maxwell* and *Dana*, for the plaintiff in error.

*L. D. Shoemaker*, for the defendant in error.

The opinion of the court was delivered by

WOODWARD, J.—At the time the will was written, the testator did not mean to dispose of the bulk of his estate by any testamentary act, but meant, rather, that the distribution of the bulk should be controlled by notes and deeds to be thereafter made in favour of his children. This purpose is avowed in the first clause of the will, where, after speaking of the notes and deeds, he proceeds to dispose, specifically, of all his "*remaining* real and personal estate." Whatever, therefore, was not contained in the specific devises to his wife and granddaughter, was not to pass under the will, but was to go to his children, by means of the deeds, or in payment of the notes, which he intended to leave behind him.

[Hitchcock v. Hitchcock.]

This was his general intent. But he meant, it is argued, that Celinda should have no more than the two thousand dollar legacy. Undoubtedly, this was the particular intent in his mind. Yet it is no more clear that he intended so to limit her participation in his estate, than it is that he intended to make the notes and deeds ; in other words, the general and the particular intents are equally manifest from the face of the will.

Now, it is a canon of interpretation, that a will speaks for some purposes from the period of execution, and for others from the death of the testator, but never operates until the latter period. Hence it is, that after-acquired real estate will pass under a general devise in a will, unless there be words which indicate an intention not to pass it; a rule which rests now on legislative authority, but which legislation was called for by the decision in the case of Girard's Heirs v. The City of Philadelphia, 4 *Rawle* 323, just ten days before the 10th section of our statute of wills was enacted. And hence also, an estate owned by the testator at the date of his will, will not pass under it, where the intent is clearly expressed, that it shall not, but shall be reserved for future disposition by deeds and notes.

But, though Mr. Hitchcock lived more than a year after the date of his will, he made no deeds or notes such as he contemplated. What then ? Simply, that he died intestate as to all of his estate not specifically disposed of by his will. It went to his legal heirs. And whatever he may have intended when his will was signed, we must hold that he changed his mind, and that he intended, when he came to die, that the bulk of his estate should be unaffected by his will, and should pass under the intestate laws. If he did not change his mind in respect to the notes and deeds, why did he not execute them ? But if he did change his mind in respect to them, and yet left his will unaltered, he meant to die intestate as to the bulk of his estate. This seems to us an inevitable conclusion. And from this it follows, that Celinda would be entitled as an heir, for, as to so much of his estate as was not devised, no wish or desire expressed in his will could control its distribution. A man may, by his will, take his estate out of the intestate statutes, by devising it to others than his heirs at law, but if he do not, he cannot repeal or control those statutes. However clearly the particular intent, that Celinda should enjoy only $2000 of his estate, may have been expressed, it must give way to the general intent, which existed at the death of the testator, that whatever was not specifically devised should be distributed under the intestate laws. For such is another rule of interpretation found in all the text writers, that where there is a general intent and a particular one, and these are inconsistent, the particular is to be sacrificed to the general intent.

And still another rule applies here,—that merely negative

[Hitchcock *v.* Hitchcock.]

words are not sufficient to exclude the title of the heir or next of kin.    There must be an actual gift to some other definite object. See the rules collected in Mr. Fish's last edition of *Williams on Executors*, vol. 2, p. 971.

Here there was no devise of that part of the estate which is in question in this suit, no conveyance of it, no debts created to control its distribution.    Then the heirs at law succeed to it.

The negative words respecting Celinda are incompetent to disinherit her.    They expressed a particular intent in the testator's mind when he signed his will, and that was consistent with the general intent then existing; but he died with another and different general intent, to which the expressed particular intent must be sacrificed.    Thus the operation of the will is made to date from the death of the testator, rather than from the time of its execution, the accepted principles of interpretation are not violated, and the statutes of distribution are left to operate on what the testator left to their operation.

The judgment is affirmed.