## COULAM *v.* DOULL.

APPEAL FROM THE SUPREME COURT OF THE TERRITORY OF UTAH.

No. 124. Submitted November 18, 1889. — Decided January 27, 1890.

Under the statute of Utah, enacting that when a testator omits to provide in his will for any of his children or the issue of any deceased child, such child or issue of a child shall have the same share in the estate it would have had had the testator died intestate, "unless it shall appear that such omission was intentional," the intention of the testator is not necessarily to be gathered from the will alone, but extrinsic evidence is admissible to prove it.

A statute of Massachusetts, touching wills in which the testator fails to make provision for a child or children or issue of a deceased child in being when the will was made, was substantially followed by the legislature of California; and, as enacted in California, was followed in Utah. In Massachusetts it received a construction by the Supreme Judicial Court of the State which the Supreme Court of California had, before the adoption of the statute in Utah, declined to follow. In a case arising under the statute of Utah; *Held,* that the court was at liberty to adopt the construction which was in accordance with its own judgment, and that it was not obliged to follow the construction given to it by the Supreme Court of California.

JOHN COULAM of Salt Lake City, in the county of Salt Lake and Territory of Utah, died at that place on the 20th day of May, A.D. 1877, leaving him surviving, his widow, now Ann Doull, (she having since his death intermarried with one George Doull,) and John Coulam, George Coulam, Henry Coulam, Fanny Baker and Sarah J. Heiner, his children and

only heirs-at-law. At the time of his death, the said John Coulam was seized in fee simple, and in possession, of the following described real property, to wit: "All of lot No. six (6), in block fifty-nine (59), in plot 'B,' Salt Lake City survey, in the city and county of Salt Lake and Territory aforesaid, with the tenements and appurtenances thereunto belonging." He left a last will and testament, which was duly admitted to probate, and was as follows:

"I, John Coulam, being of sound mind and memory, do make and publish this my last will and testament in manner and form following: I give and bequeath unto my beloved wife, Ann Coulam, all my personal property and real estate, to wit, the sum of one thousand and twenty-five ($1025) dollars, held in trust by Wells, Fargo & Co., and now due me from the Hon. William A. Hamill by note now in my possession; and I also give and bequeath unto my said beloved wife Ann my freehold estate known and recorded as lot six (6), block fifty-nine (59), plot 'B,' Salt Lake City survey, with all the messuages, tenements and appurtenances thereunto belonging; and all the rest, residue and remainder, and all the debts accruing to me, of my personal estate, goods and chattels of what kind and nature soever I give and bequeath the same to my said beloved wife; and I hereby revoke all former wills by me made."

Upon the 2d of November, 1885, the children of the testator and one Zera Snow brought an action in the District Court of the Third Judicial District of the Territory to recover an undivided interest in the real estate above described, the children claiming, as heirs-at-law, three-quarters of the estate, real and personal, of Coulam, deceased, and Zera Snow, as owner by conveyance from said heirs-at-law made since the death of John Coulam, an undivided one-fourth part of the real estate in question, the plaintiffs together averring title to an undivided three-quarters thereof.

The complaint set up the will, and alleged "that in or by said will said John Coulam, testator, omitted to provide for any of his said children, the said plaintiffs: that it does not appear that said omission was intentional." The defendant answered,

and denied. "that the omission of said decedent testator to provide in his said will for his said children was not intentional on the part of said testator, and, on the contrary, alleges that said omission was intentional on the part of said testator and so appears." A jury having been expressly waived, the cause was heard by the court.

Upon the trial evidence was offered on behalf of the defendant, and admitted over the objection of the plaintiffs, tending to show that before and after and at the time of the execution and publication of the will, and up to the time of his death, the testator was in full possession of his faculties, and of sound and perfect memory; that he had no other property when the will was executed or at his death, than that mentioned in the will; that he had previously personally prepared the drafts of two other wills, which he called for and which were before him when the will in question was drawn, both of those prior wills being in his own handwriting and signed by him, and omitting to provide for his children ; that the instrument in question was drawn by a Mr. Campbell, to whom the testator gave instructions as to what it should contain; that the testator's wife, the defendant in this action, had lived with him for nearly thirty years, had raised his children, the youngest from babyhood, and had worked hard and helped to make the money with which the houses upon the lot were built; that the children had all attained maturity, were married, and had homes of their own, (chiefly bestowed on them by the testator and his wife,) and were in comfortable circumstances; and that his daughters and sons were in daily attendance upon him during his last illness, and when the will was drawn up and executed. None of the evidence was offered for the purpose of showing advancements.

The court thereupon rendered its decision in writing, and made and filed the following finding of fact:

"That the omission and failure of John Coulam, senior, the testator, to provide for any of his children, the said plaintiffs, in his last will and testament, was intentional on his part."

And the conclusion of law: "That the defendant is entitled to recover herein."

Judgment was accordingly entered for the defendant, and the cause was brought here on appeal.

*Mr. William C. Hall* and *Mr. John A. Marshall* for appellants.

The appellants and the appellee claim under a common source of title, viz.: one John Coulam, who died testate in 1877. His will is set out in the complaint, and purports to give his entire estate to his wife, the appellee, entirely ignoring the appellants, his children.

(694) Section 10, Compiled Laws of Utah of 1876, p. 272, is as follows: " When any testator shall omit to provide in his or her will for any of his or her children, or for the issue of any deceased child, unless it shall appear that such omission was intentional, such child, or the issue of such child, shall have the same share in the estate of the testator as if he or she had died intestate, to be assigned as provided in the preceding section."

(703) Sec. 19, Compiled Laws of 1876, p. 273, provides that if the decedent leave a husband or a wife and more than one child, the estate of the decedent goes one-fourth to the surviving husband or wife for life, and the remainder with the other three-fourths to the children.

Two issues are raised by the pleadings: but the second, having been abandoned below, there remains in this court for discussion only the question: Was the omission of the testator to provide in his will for his children intentional? The question of law raised by the assignment of errors relates to the admission of parol testimony, tending to prove that the testator intentionally omitted to provide for his children: a part of such testimony being the contents of two drafts of former wills, not published or witnessed.

On the part of the appellants it is contended that the omission of the testator to provide in his will for his children, by virtue of the statute, annexes to the will the condition that the will shall be void, *quoad* the children, unless a contrary intention appears by intrinsic evidence, and that the operation

of this rule of law is altogether independent of the intention of the testator except as that intention may be expressed in the will.

It is a general rule that the intent of a testator must be found on the face of the will, and that extrinsic evidence is inadmissible to show it, the exception being where such evidence is needed to remove a latent ambiguity. *Mann* v. *Mann*, 1 Johns. Ch. 231; *Tucker* v. *Seaman's Aid Society*, 7 Met. 188; *Spencer* v. *Higgins*, 22 Connecticut, 526; *Kurtz* v. *Hibner*, 55 Illinois, 514.

To this general rule and its limitations as stated we find no opposing authority, but it is contended in behalf of the appellee that this rule is not applicable to the case at bar.

Our statute on the subject of pretermitted children is but an outgrowth of the common law doctrine of the implied revocation of a will by a subsequent marriage and birth of issue, and the authorities defining that doctrine of the common law will assist in arriving at the proper construction of the statute in question.

Under the doctrine above referred to, it was well settled that no revocation would be implied by law if the testator in his will made any provision, however small, for the future wife and children; such provision furnishing intrinsic evidence that he did not intend the future alteration in his circumstances to work a revocation of his will. *Kenebel* v. *Scrafton*, 2 East, 530, 541.

It was then contended, as it is claimed by appellee in this case, that the entire doctrine was one of presumption raised by the parol proof of extrinsic circumstances, viz.: the subsequent marriage and birth of issue, and that a presumption so raised could be rebutted by like parol evidence.

This contention received serious consideration in *Marston* v. *Roe*, 8 Ad. & El. 14, decided in 1838; the case having been argued in the presence of all the judges of England, with the exception of Lord Denman, as stated in the opinion; and it was in that case decided that no extrinsic evidence would be admissible to prove an intention against revocation, but that the revocation took place by virtue of a condition tacitly an-

'nexed to the will by the law, independent of the intention of the testator, except as such intention was expressed in the will. A portion of the evidence so excluded was, as in the case at bar, the drafts of two former wills.

And the reason for the exclusion of such evidence is stated to be, that the statute required wills of real estate to be in writing, and that the object of the statute was to prevent the title to real property from being dependent on "the perplexity and uncertainty of such conflicting evidence."

The same reason exists in this Territory. See sec. (654), p. 265, and sec. (686), p. 271, Compiled Laws of Utah, 1876.

The case of *Marston* v. *Roe* has been always followed in this country. 2 Greenl. Ev. §§ 684, 685; *C. B. & Q. Railroad* v. *Wasserman*, 22 Fed. Rep. 872.

In Massachusetts in 1783, a statute was passed containing the following provision, viz.: "That any child or children, . . . not having a legacy given them in the will of their father or mother, shall have a proportion of the estate of their parent assigned to him, her or them, as though such parent had died intestate. . . ." Stat. of 1783, c. 24, § 8. It was the well settled construction of this statute by the Supreme Court of said State, that although the child had no legacy left him in the will of the parent, yet if an intention to omit him appeared, he would not be entitled to any portion of the estate. *Tucker* v. *Boston*, 18 Pick. 162, 167; *Wilson* v. *Fosket*, 6 Met. 400; *S. C.* 39 Am. Dec. 736. But it was equally well settled that such intention could only be made to appear by intrinsic evidence, and that all extrinsic evidence of such intent was inadmissible. See cases above cited.

After this statute was thus judicially construed the laws of Massachusetts were revised. Sec. 21 of c. 62, Rev. Stats., provided that an heir for whom an ancestor omits to provide in his will, is entitled to a distributive share of the ancestor's estate, unless he shall have "been provided for by the testator in his lifetime, or unless it shall appear that such omission was intentional, *and not occasioned by any mistake or accident.*" It is stated by the Commissioners for revising the statutes, in their note to the section last quoted, that it was taken from

Stat. 1783, c. 24, "adopting the construction which has been given to it by the Supreme Court." See brief of counsel for appellee in *Wilson* v. *Fosket*, cited *ante.*

Under this last statute *Wilson* v. *Fosket* was decided in 1843. That case, without overruling the prior cases in Massachusetts under the statute of 1783, or intimating a doubt of their correctness, decided that the commissioners "had builded better than they knew," and that under the new statute parol evidence, including evidence of the parol declarations of the testator, was admissible to show that the testator intended to omit to provide for his child. That case has ever since been followed in Massachusetts under the same statute.

Iowa adopted the Massachusetts statute, last cited, and adopted with it the judicial construction placed thereon by the Massachusetts courts. *Lorieux* v. *Keller,* 5 Iowa, 196; *S. C.* 68 Am. Dec. 696.

We submit that unless the Massachusetts cases under the new statute find their warrant for the admission of extrinsic evidence in the words, "and not occasioned by any mistake or accident," they are opposed to both principle and the weight of authority. It is difficult to conceive how a mistake or accident can be shown except by extrinsic evidence, and such mistake or accident as will permit the child to inherit has been held in Massachusetts to be perfectly consistent with an intentional omission of the child's name from the will. *Ramsdill* v. *Wentworth,* 101 Mass. 125.

In Missouri the statute is substantially the same as the Massachusetts statute of 1783, and has uniformly received the same construction, viz.: that to disinherit a child it is not necessary that he should be named or provided for in the will of the parent, if the omission to do so appears to be intentional; but that such intention can only be proved by intrinsic evidence. *Bradley* v. *Bradley,* 24 Missouri, 311; *Burch* v. *Brown,* 46 Missouri, 441; *Pounds* v. *Dale,* 48 Missouri, 270; *Wetherall* v. *Harris,* 51 Missouri, 65. See, also, *Chace* v. *Chace,* 6 R. I. 407; *S. C.* 78 Am. Dec. 446.

The Utah statute in question is precisely similar, it seems to us, to the Massachusetts statute of 1783 and to the Missouri statute as they were judicially construed.

In California in 1868, in the case of *Estate of Garraud*, 35 California, 336, section 17 of the Stat. of Wills of that State, of which (694) sec. 10, Comp. Laws of Utah, 1876, is an exact copy, first received a judicial construction by the Supreme Court. In that case it was held that the intention of the testator to omit to provide for his children can only be gathered from the face of the will; that it can only be proved by evidence competent to prove any other testamentary intention, and that evidence of the acts and declarations of the testator is inadmissible to prove such intention.

Suppose at the time of the actual execution of the will, the testator unintentionally omits to provide for his children, but that afterwards he changes his mind and declares his intention not to provide for them, is the will ambulatory in the meantime? and where are such changes to stop?

If there be any doubt as to the true construction of the statute in question, it would be settled by the consideration, that in adopting the California statute, we adopted its received construction in California, which must be considered as accompanying the statute to this Territory, and forming an integral part of it. *Cathcart* v. *Robinson*, 5 Pet. 264; *Bemis* v. *Becker*, 1 Kansas, 226.

The leading case of *Estate of Garraud*, 35 California, 336, was decided in 1868. In the case of *Estate of Utz*, 43 California, 200, decided in 1872, and in *Pearson* v. *Pearson*, 46 California, 609, decided in 1873, the leading case was admitted by counsel to be controlling in California, and its authority has never been questioned in that State.

In 1876, the legislature of Utah Territory enacted a statute of wills, seven sections of which were literally copied from the California act, as it was when the *Estate of Garraud* was decided. See sections, 6–12 inclusive, Compiled Laws of Utah, p. 271. One of these sections, section 10, is the one invoked by appellants in this case. It is to be presumed, then, that the legislature of Utah Territory was familiar with the judicial construction of the California statute placed thereon by the highest court of that State, and that they intended to adopt that construction when they adopted the statute.

Although evidence of all the circumstances which surrounded the author of a written instrument will be received for the purpose of ascertaining his intentions, yet those intentions must ultimately be determined by the *language* of the instrument. No proof, however conclusive in its nature, can be admitted with the view of setting up an intention inconsistent with the known meaning of the writing itself. For the duty of the court in all these cases is to ascertain, not what the parties may have really intended, as distinguished from what their words express, but simply what is the meaning of the words they have used. It is merely a duty of interpretation, and evidence of surrounding circumstances cannot change the legal effect of clear and unambiguous words. *Reynolds* v. *Fire Ins. Co.*, 47 N. Y. 597, 606; *Partridge* v. *Ins. Co.*, 15 Wall. 573; *Maryland* v. *Railroad Co.*, 22 Wall. 105; *Kurtz* v. *Hibner*, 55 Illinois, 514; *Waldron* v. *Waldron*, 45 Michigan, 350. There is no pretence made in this case that the language of the will is not clear and unambiguous.

The uniform language of the authorities is to the effect that no intention to omit to provide for the children appears by reason of the absolute devise to the appellee. *C. B. & Q. Railroad* v. *Wasserman*, 22 Fed. Rep. 874; *Pounds* v. *Dale*, 48 Missouri, 270; *Ramsdill* v. *Wentworth*, 106 Mass. 320; *Bush* v. *Lindsay*, 44 California, 121.

*Mr. Benjamin Sheeks* and *Mr. Joseph L. Rawlins* for appellee.

MR. CHIEF JUSTICE FULLER, after stating the case as above, delivered the opinion of the court.

Accepting the finding of fact that the testator intentionally excluded his children from any share of the property disposed of by the will, respecting which, upon this record, there could be no doubt, the only question in the case is as to whether the court erred in admitting extrinsic evidence to establish that the omission to provide for the children was intentional. The solution of this question depends upon the proper construction of the statutes of Utah bearing upon the subject.

Under those statutes a will or codicil to " pass the estate of the devisor " must be in writing ; and by section one of " An Act relative to the Estates of Decedents," approved February 18, 1876, which is section 685 of the Compiled Statutes of Utah of that year, " every devise purporting to convey all the real estate of the testator " carried that subsequently acquired, "unless it shall clearly appear by his or her will that he or she intended otherwise."

Sections 9, 10 and 12 are as follows :

(693) " SEC. 9. When any child shall have been born, after the making of its parent's will, and no provision shall have been made for him or her therein, such child shall have the same share in the estate of the testator, as if the testator had died intestate ; and the share of such child shall be assigned as provided by law, in case of intestate estates, unless it shall be apparent from the will that it was the intention of the testator that no provision should be made for such child.

(694) " SEC. 10. When any testator shall omit to provide in his or her will for any of his or her children or for the issue of any deceased child, unless it shall appear that such omission was intentional, such child, or the issue of such child, shall have the same share in the estate of the testator as if he or she had died intestate, to be assigned as provided in the preceding section."

(696) " SEC. 12. If such child, or children, or their descendants, so unprovided for, shall have had an equal proportion of the testator's estate bestowed on them in the testator's lifetime, by way of advancement, they shall take nothing in virtue of the provisions of the three preceding sections." Compiled Laws of Utah, 1876, 262, c. 2, tit. 14.

Section 19 provides that, in case of intestacy, if the decedent left a husband or a wife and more than one child, the estate of the decedent shall go, one-fourth to the surviving husband or wife for life and the remainder with the other three-fourths to the children.

It will be seen that section 12 applies to advancements during the lifetime of the testator, and section 9 to a child born after the execution of the will, no provision having been made

for it therein. The child is to take its share as provided by law in case of intestacy, "unless it shall be apparent from the will that it was the intention of the testator that no provision should be made for such child." And section 10 relates to children in being, or the issue of any deceased child, at the time of the execution of the will, who are to take as in case of intestacy, "unless it shall appear that such omission was intentional."

As to a child born after the making of the will, the intention to omit must be apparent from the will; as to children in being when the will is made, the statute does not say how it shall appear that the omission was intentional. But it is insisted on behalf of appellants that such intention is required in the latter case also to appear from the will, and cannot be shown by evidence *aliunde*.

The source of the statute under consideration was undoubtedly that of Massachusetts upon the same subject, though it is said that this particular statute was taken from a similar one in California.

The first and second sections of an act of the Province of Massachusetts, passed in the year 1700, (12 Wm. 3,) with their preambles, read as follows: "Forasmuch as it often happens that children are not borne till after the death of their fathers, and also have no provision made for them in their wills,

"*Be it therefore enacted, etc.*, That as often as any child shall happen to be borne after the death of the father, without having any provision made in his will, every such posthumous child shall have right and interest in the estate of his or her father, in like manner as if he had died intestate, and the same shall accordingly be assigned and set out as the law directs for the distribution of the estates of intestates.

"*And whereas*, through the anguish of the diseased [deceased] testator, or through his solicitous intention though in health, or through the oversight of the scribe, some of the testator's children are omitted and not mentioned in the will, many children also being borne after the makeing of the will, thô in the lifetime of their parents,

"*Be it therefore enacted, etc.*, That any child or children not-

having a legacy given them in the will of their father or mother, every such child shall have a proportion of the estate of their parents given and set out unto them as the law directs for the distribution of the estates of intestates; *provided* such child or children have not had an equal proportion of his estate bestowed on them by the father in his lifetime." 1 Mass. Province Laws, 429, 430.

This provincial act was in effect repealed by an act of the Commonwealth of Massachusetts, passed February 6th, 1784, by which it was revised, the phraseology somewhat changed, and the preambles omitted. Mass. Stat. 1783, c. 24, §§ 1, 8.

By the first section of this latter act any person seized in fee simple of any estate is authorized to devise the same to and among his children or others, as he shall think fit, without any limitation of persons whatsoever. By the eighth section it is provided "that any child or children, or their legal representatives in case of their death, not having a legacy given him, her or them in the will of their father or mother, shall have a proportion of the estate of their parents assigned unto him, her or them, as though such parent had died intestate; provided such child, children or grandchildren have not had an equal proportion of the deceased's estate bestowed on him, her or them in the deceased's lifetime."

The Supreme Judicial Court held that the object of the statute was to furnish a remedy solely for those cases, where, from accident or other causes, the children or grandchildren might be supposed to have been forgotten by the testator in making his will; and that, whenever from the tenor of the will or any part of it, sufficient evidence appeared to indicate that the testator had not forgotten his children or grandchildren, as the case might be, when he made his will, they should not be entitled to a distributive share of his estate, although no legacy was given them by the will. *Terry* v. *Foster*, 1 Mass. 146; *Wild* v. *Brewer*, 2 Mass. 570; *Church* v. *Crocker*, 3 Mass. 17; *Wilder* v. *Goss*, 14 Mass. 357.

Thus, although the statute provided that a child should take, notwithstanding its name was omitted, the court ruled that if on the face of the will it appeared that such omission was in-

tentional, the child could not take ; hence, whenever the will was silent the child took, and to prevent that result, where such silence was by design, the statute was amended, so as to read as follows :

"When any testator shall omit to provide in his will for any of his children, or for the issue of any deceased child; they shall take the same share of his estate, both real and personal, that they would have been entitled to if he had died intestate; unless they shall have been provided for by the testator in his lifetime; or unless it shall appear that such omission was intentional, and not occasioned by any mistake or accident." Rev. Stat. Mass. 1836, c. 62, § 21.

How appear? Evidently *aliunde* the will. If it must appear upon the face of the will that the omission was intentional, the words inserted in the statute were superfluous, for if it did so appear the child could not take, notwithstanding the provision that in case of omission it should take, inasmuch as the latter provision was only inserted to give the omitted child a share, not against the intention of the testator, but because of the presumption of an oversight. Hence in *Wilson* v. *Fosket*, 6 Met. 400, the court held that under the statute as amended, evidence *dehors* the will was admissible to establish that the omission was intentional; and such is the settled law of Massachusetts. *Converse* v. *Wales*, 4 Allen, 512; *Buckley* v. *Gerard*, 123 Mass. 8 ; *Ramsdill* v. *Wentworth*, 101 Mass. 125. In the latter case the court said : " The operation of the statute is peculiar, but there is no violation under it of the rules of evidence. The only issue is, whether provision was omitted in the will by design, and without mistake or accident. Parol evidence is admitted, although the result may change or modify the disposition of the testator's estate. The will is used to show that there is no legacy under it; and however the issue may be established, there is no conflict with its terms."

In *Bancroft* v. *Ives*, 3 Gray, 367, the statute of Massachusetts was held to apply to children born after the making of the will and before the death of their father. The argument was pressed that the language " omit to provide in his will " neces-

sarily meant and should be confined to children living at the time of making the will. This argument was regarded by Chief Justice Shaw as plausible but not sound, because as a man's will is ambulatory until his decease, the time to which the omission applied was the time of the testator's death. If, therefore, he had then made no provision by his will, the case of the statute arose, for he had made a will, but left a child without having made any provision for such child.

By the Utah statute, however, specific provision is made for children born after the making of the will, and also for children in being but omitted when the will is made. Children born after the making of the will but before the decease, inherit, unless it appears from the will that the testator intended that they should not. And this applies to posthumous children.

Mr. Jarman lays it down that marriage and the birth of a child, conjointly, revoked a man's will, whether of personal or real estate, these circumstances producing such a total change in the testator's situation as to lead to a presumption that he could not have intended a disposition of property previously made to continue unchanged. But this effect is not produced where there is a provision made for both wife and children by the will itself, *Kenebel* v. *Scrafton*, 2 East, 530; or by a previous settlement providing for both. 1 Jarman on Wills, 4th Eng. ed.; 5th Am. ed. \*123, \*125.

Revocation, treated as matter of presumption merely, was thought, in *Brady* v. *Cubitt*, 1 Doug. 31, open to be rebutted by parol evidence, and this is guardedly conceded by Chancellor Kent in *Brush* v. *Wilkins*, 4 Johns. Ch. 506, and by Mr. Greenleaf, vol. 2, § 684. But, as is stated in a note to that section, the doctrine that the presumption is not conclusive has been overruled, upon great consideration, in the cases of *Marston* v. *Roe*, 8 Ad. & El. 14, and *Israell* v. *Rodon*, 2 Moore P. C. 51, in the former of which it was, among other things, resolved, that, " where an unmarried man, without children by a former marriage, devises all the estate he has at the time of making his will, and leaves no provision for any child of a future marriage, *the law annexes to such will the tacit condition* that if he afterwards marries, and has a child born of such

marriage, the will shall be revoked;" and that "evidence not amounting to proof of publication, cannot be received in a court of law, to show that the testator intended that his will should stand good, notwithstanding his subsequent marriage and the birth of issue; because these events operate as a revocation by force of a *rule of law*, and independent of the testator."

The subject is regulated in this country by the statutes of the several States and Territories, marriage alone working revocation under some, and both marriage and birth of issue being required under others, while subsequently born children, unprovided for, are allowed to take unless a contrary intention appears.

But the provision we are considering concerns children in being when the will is made. As to children born after death or the making of the will, the reason why the intention to omit them should appear on the face of the will is obvious. It is the same as that upon which the doctrine of revocation rests — the change in the testator's situation. But this reason loses its force so far as children living when the will is made are concerned; and this explains the marked difference between the sections of the statute before us applicable to the two classes.

The statute raises a presumption that the omission to provide for children or grandchildren living when a will is made is the result of forgetfulness, infirmity or misapprehension, and not of design; but this is a rebuttable presumption, in view of the language employed, which negatives a taking contrary to an intentional omission, and at the same time leaves undefined the mode by which the affirmative purpose is to be established.

Legal presumptions drawn by the courts independently of or against the words of an instrument may be, in some instances, repelled by extrinsic evidence, and this statutory presumption of an unexpressed intention to provide may be rebutted in the same way.

Under section 12, a pretermitted child is entitled to no share if it has had an equal proportion by way of advancement, but it is not contended that this fact must necessarily appear from

the will when that is not required by statute, yet proof of advancements and of intentional omission alike defeat the claimant.

The rule as to patent and latent ambiguities, so far as analogous, sustains the same conclusion. Where a devise is, on the face of it, clear and intelligible, yet from external circumstances an ambiguity arises as to which of two or more things, or of two or more persons, the testator referred to, it being legally certain that he intended one or the other, evidence of his declarations, of the instructions given for his will, and of other circumstances of the like nature, is admissible to determine his intention.

The will in this case is entirely unambiguous. The testator's intention was that his wife should have the property. There being children at the time of the execution of the will, an ambiguity may be said to have been created by operation of the statute, as to their having been intentionally omitted, which ambiguity evidence of the character named at once removed.

Children so situated do not set up title under the will but under the statute. The will is used to establish that they have no legacy or devise under it. Then the inquiry arises whether the testator intended to omit them. Evidence that he did does not conflict with the tenor of the will. It simply proves that he meant what he said. Instead of tending to show the testator's real purpose to have been other than is apparent upon the face of the will, it confirms the purpose there indicated. The fact of the existence of children when a will is made is proven *dehors* the instrument, and since under the statute that evidence opens up a question as to the testator's intention, which but for the statute could not have arisen, and which by the statute is not required to be determined by the will, we cannot perceive why the disposal of it should be so limited.

It is contended that the statutory provision in question was copied from that of California, and that we are bound by the construction previously put upon it by the courts of the latter State. The California act declared that in case of the omission

of the testator to provide in his will for his children, they should be entitled to the same share as in case of intestacy, "unless it shall appear that such omission was intentional." Laws of California, 1850, c. 52, § 17.

In *Payne* v. *Payne*, 18 California, 291, 302, the Supreme Court of California, speaking through its then Chief Justice, Mr. Justice Field, said: "The only object of the statute is to protect the children against omission or oversight, which not unfrequently arises from sickness, old age, or other infirmity, or the peculiar circumstances under which the will is executed. When, however, the children are present to the mind of the testator, and the fact that they are mentioned by him is conclusive evidence of this, the statute affords no protection, if provision is not made for them. The inference follows that no provision was intended;" and *Terry* v. *Foster*, *Wild* v. *Brewer*, *Church* v. *Crocker*, and *Wilder* v. *Goss*, *supra*, were cited.

But in the *Matter of the Estate of Garraud*, 35 California, 336, it was held that evidence *aliunde* the will was not admissible to show that the omission to make provision for children was intentional, and, in respect to the Massachusetts decisions, the court was of opinion that the words "and not occasioned by any mistake or accident," found in the statute of Massachusetts but not in that of California, were very material, and furnished the real ground for the admission of extrinsic evidence. We do not think so. While those words may strengthen the argument in favor of the admissibility of the evidence, it by no means follows that the construction of the statute should be otherwise in their absence. The evidence which shows that the omission was intentional establishes that it was not through accident or mistake. Action purposely taken by one in the sufficient possession of his faculties, and not induced by fraud or undue influence, excludes in itself the idea of casualty or error.

We are satisfied that this particular phraseology was used out of abundant caution, as serving to render the proper construction somewhat plainer, and that the construction must be the same, although those words are not used.

The rule ordinarily followed in construing statutes is to adopt the construction of the courts of the country by whose legislature the statute was originally adopted, but we are not constrained to apply that rule in this instance. The original source of the statute is to be found in the legislation of Massachusetts. The Supreme Court of California declined to treat the received construction in Massachusetts as accompanying the statute and forming an integral part of it, upon a distinction which we do not regard as well drawn. That construction commends itself to our judgment, and we hold that the Supreme Court of the Territory properly applied it.

The evidence was competent, and the judgment must be

*Affirmea.*

MR. JUSTICE BREWER not having been a member of the court at the time this case was considered took no part in its decision.