Ríos, Demandante y Apelante, v. Richardson, Tesorero de Puerto Rico, Demandado y Apelado.

Apelación procedente de la Corte de Distrito de Humacao, en causa sobre devolución de contribuciones.

No. 1384.—Resuelto en julio 28, 1916.

Interpretación de Estatutos—Estatutos Tomados de otros Estados.—Es regla bien conocida de interpretación de estatutos la de que, los que han sido aprobados originalmente en otros Estados al ser adoptados se considera que lo son con la interpretación ya establecida que les hubieren dado en el Estado de donde son transcritos.

Contribuciones—Devolución de—Pago Bajo Protesta—Junta de Revisión e Igualamiento—Tasación y Retasación de la Propiedad—Derogación Implícita.—La ley disponiendo el pago de contribuciones bajo protesta y estableciendo un procedimiento para exigir la devolución de las mismas (Leyes 1911, p. 132), no derogó los artículos 308, 309 y 310 del Código Político, por lo que el contribuyente que deje de acudir a la Junta de Revisión e Igualamiento en solicitud de un remedio cuando ésta tiene poder para actuar, no puede pagar bajo protesta y luego recobrar las contribuciones en una acción establecida con tal fin.

Id.—Id.—Causa de Acción—Demanda—Recurso Administrativo.—No aduce hechos suficientes para constituir una causa de acción una demanda sobre devolución de contribuciones pagadas bajo protesta, cuando apareciendo de ella que la Junta de Revisión e Igualamiento tenía jurisdicción para revisar la tasación hecha no consta que se hubiere recurrido a ella administrativamente.

Los hechos están expresados en la opinión.

Abogado de la apelante: Sr. Francisco González.

Abogados del apelado: Sres. Howard L. Kern, Attorney General, y Robert W. Perkins, Jr., Attorney General Auxiliar.

El Juez Asociado Sr. Hutchison, emitió la opinión del tribunal.

La demandante y apelante entabló una acción sobre devolución de contribuciones "tasadas por los años anteriores" (back-assessed) y pagadas bajo protesta, sobre una finca rústica que se alega forma parte de otra finca colindante de mayor cabida, que fueron incluídas en tasaciones anteriores de esta última finca y satisfechas dichas contribuciones con las correspondientes a la finca mayor, de acuerdo con dichas anteriores tasaciones.

La corte inferior declaró con lugar la excepción previa que fué formulada a dicha demanda por no aducir hechos suficientes para determinar una causa de acción, porque en la misma no se alegó que se hubiera interpuesto recurso de alzada a la Junta de Revisión e Igualamiento:

"Siempre existen métodos por los cuales una persona cuya propiedad ha sido tasada indebida o injustamente para la contribución puede hacer que se rebaje la tasación o la contribución sin tener que acudir a los remedios legales ordinarios. Mientras el tasador conserva todavía la lista o planilla en su poder sin terminarla, puede éste rebajar cualquier tasación a iniciativa propia o a solicitud de parte interesada cuando está convencido de que dicha tasación es ilegal o injusta, total o parcialmente. Ningún estatuto sería necesario para esto. Pero cuando la tasación ha salido de sus manos el derecho a obtener una rebaja depende en general del estatuto * * *.

"El remedio que generalmente concede el estatuto es para la revisión directa bien por el mismo tasador o en alguna forma de procedimiento en apelación."

 *  *  *  *  *  *  *

"Y la regla general es que si una persona deja de acudir a la Junta de Revisión establecida por el estatuto no puede tener remedio alguno en las cortes." 2 Cooley on Taxation (3ra. Ed.) p. 1378 a 1503.

En el caso de *Board of Commissioners of Johnson Co. v. Searight Cattle Company,* 31 Pac. 268, la Corte Suprema de Wyoming, después de examinar un número de casos, llega por ellos a la siguiente conclusión:

"El sinnúmero de autoridades citadas todas se pronuncian en el sentido de que ninguna corte puede, no existiendo un estatuto que en términos expresos le confiera tal jurisdicción, revisar la resolución de un funcionario tasador o la de una junta de igualamiento creada por el estatuto referente a la tasación de propiedad. Son igualmente concluyentes en cuanto a que la solicitud hecha para que se rebaje la tasación excesiva o errónea practicada por el tasador debe presentarse al tribunal que establece el estatuto para la corrección de tasaciones excesivas, erróneas o injustas, antes de que pueda recurrirse a los tribunales aun cuando las cortes estén investidas de tal jurisdicción."

Un estatuto de Carolina del Norte, aprobado en el año 1887, disponía:

"En todo caso cuando por cualquier razón se alega que es nula una contribución que ha sido satisfecha la persona que la paga, dentro de los treinta días de verificado el pago, puede exigir por escrito del tesorero del pueblo que impone la contribución que se le devuelva, y si dentro de los noventa días siguientes dicha contribución no ha sido reintegrada surge por ello un derecho de acción contra el pueblo."

La Corte Suprema de ese Estado, en el caso de *Richmond & D. R. Co.* v. *Town of Reidsville,* 13 S. E. 865, después de resolver que era un requisito previo al derecho de acción el hacer una reclamación dentro de los treinta días siguientes al pago y que una demanda en que no se alegue dicha reclamación es insuficiente de ser excepcionada, hace el siguiente comentario acerca de este requisito:

"* * *. El precepto estatutorio que consideramos está basado en la justicia, conveniencia y buena práctica. La clase de reclamaciones a que se refiere son contra el Estado y sus agentes. Se presume que los segundos son honrados y justos y están preparados y dispuestos a permitir y cancelar toda reclamación bien fundada que se haga contra ellos. No se presume que desean litigar o negar la justicia que corresponda a cualquier persona; ni en su carácter, relaciones del negocio y transacciones pueden ellos conocer la naturaleza y méritos de la multitud de reclamaciones y demandas que pueden hacerse contra los mismos a falta de aviso. Es, por tanto, correcto, justo y conveniente hacer que las personas que tienen tales reclamaciones y demandas las presenten con razonable diligencia antes de iniciar acciones para establecerlas y hacerlas cumplir. El exigir esto no impone ningún gravamen injustificado a los reclamantes; y no debe permitirse a estos últimos demora alguna en exigir de las autoridades públicas que sus reclamaciones debidas sean reconocidas y satisfechas o negadas y rechazadas. Esto es así especialmente en cuanto a reclamaciones por contribuciones exigidas impropia o ilegalmente. Dichas reclamaciones deben ser hechas y arregladas tan pronto como fuere posible."

En enero del año arriba citado en último término la Corte Suprema de Louisiana, después de reseñar la historia de un estatuto de Louisiana y revisando los casos en que el mismo

había sido interpretado, concluye su opinión en el caso de *Shattuck* v. *City of New Orleans,* 1 So. 411, como sigue:

"\* \* \*. El derecho del contribuyente a comparecer ante el comité permanente y a ser oído en lo que respecta a la descripción de la propiedad que ha sido puesta en lista de la valoración de la misma como ha sido tasada y el informe del comité permanente sobre tasación del concejo de ·la ciudad, son procedimientos preliminares y requisitos anteriores al derecho de acción del contribuyente para probar la corrección de la tasación en las cortes de justicia. Esta fué ciertamente una sabia precaución tomada por la legislatura para evitar la molestia innecesaria y vejaminosa y la demora en el cobro de las rentas. Entendemos que las leyes de rentas deben ser consultadas al resolver sobre el derecho y causa de acción del demandante. Ellas proporcionan al contribuyente amplia justicia. No podemos suponer que el comité encargado de `la tasación no hubiera o podría haber suministrado a los demandantes un remedio amplio y rápido si en realidad ellos tenían derecho a alguno; y si no lo hicieron pudieron entonces haber acudido fácilmente a las cortes de justicia en solicitud de un remedio. Admitiendo todo lo que alegan los demandantes contra su tasación, para los · fines del argumento, no vemos razón alguna por la cual no tenía el comité amplia facultad de acuerdo con el estatuto para corregir cualesquiera errores que se demuestre que existieron en la descripción de la propiedad puesta en lista, y en valoración como fué tasada y esa es la substancia de sus demandas."

También en *Louisiana Brewing Co.* v. *Board of Assessors,* 41 La. Ann. 565; 6 So. 823, la opinión termina con estas palabras:

"Si por permanecer inactiva la corporación demandante ha dejado perder el remedio no puede quejarse de nadie sino de sí misma. La corte carece de facultad para intervenir."

En el caso de *Citizens' Savings Bank* v. *The Mayor* (N. Y. 1899, 37 App. Div. 560), la corte, refiriéndose a una acción establecida por una corporación de Connecticut, se expresó en estos términos:

"Se basa en la teoría de que si no es nula la contribución, era, citando del alegato del apelante, 'anulable al probarse el hecho de que a la fecha de la tasación no tenía el demandante ningún sobrante

que pudiera imponérsele contribución, y, por tanto, el capital del
banco no podía ser parte de su sobrante.' Es suficiente contestación
a la conclusión a que se llega en vista de esta proposición, que ya
sea o no correcta la premisa, el capital de la demandante en los ban-
cos situados aquí estaba *prima facie* sujeto a la contribución, y que
era su deber obtener la debida deducción por sus deudas, y de no
conseguir esto revisar la acción de los tasadores mediante *certiorari.*
(*United States Trust Co.* v. *The Mayor,* 144 N. Y. 488.) Un accio-
nista puede, si así lo desea, renunciar el derecho que tiene a dicha
deducción. Así lo hace cuando deja de solicitarla y para su contribu-
ción sin ningún reparo. Es ocioso decir que el capital de la deman-
dante estaba absolutamente exento de contribución porque sus de-
pósitos y sobrantes excedían al valor de sus acciones, o porque la
compra de las acciones era necesariamente una inversión de sus depó-
sitos. Estas posiciones sólo podían ser sostenidas mediante prueba
suministrada a los comisionados de contribución al solicitar una de-
ducción total o parcial. Podía ciertamente imponerse contribución
a las acciones y los comisionados tenían jurisdicción para fijar la
contribución. Su jurisdicción de acuerdo con el estatuto no quedaba
afectada porque existieran otros hechos relacionados con la verdadera
medida de deducción, respecto a cuyos hechos jamás se les llamó la
atención. Las tasaciones eran, por tanto, completamente válidas.''

En el asunto de Baumgarten (N. Y. 1899, 39 App. Div.
174), una viuda pensionada por los Estados Unidos, obtuvo
una orden de la corte del condado en que se le ordenaba a
la Junta de Superintendentes que devolvieran ciertas con-
tribuciones, por la razón de que habiendo sido pagada la pro-
piedad con dinero de una pensión estaba exenta de la contri-
bución. Los procedimientos se basaban en la sección 16 del
capítulo 686 de las leyes de 1892, la cual prescribe lo si-
guiente:

"Sec. 16.—*Corrección de tasaciones y devolución y entrega de
contribuciones ilegales.*—Cualquier junta así constituída puede corre-
gir cualquier error material manifiesto u otro error en cualesquiera
tasación o informe presentado por uno o más de dichos funcionarios
del pueblo a la referida junta, o que pueda o haya sido presentado
debidamente a la consideración de la junta para su decisión, confirma-
ción o revisión; y hacer que sea devuelta a cualquier persona la suma
que se le haya cobrado por cualquiera contribución que ha sido ilegal

o indebidamente fijada o impuesta, y por virtud de la orden de la corte del condado se devolverá el importe de dicha contribución.''

En apelación la corte de expresó en estos términos:

''Habiendo sido pagada su finca en parte con dinero de pensión era su deber, si ella alegaba una exención, comparecer ante los tasadores en el día fijado para oir quejas y hacer su reclamación. No habiendo cumplido con esto no tiene remedio. Debe considerarse que esta cuestión está resuelta en tanto esta corte pueda resolver una cuestión. (*Broderick* v. *City of Yonkers*, 22 App. Div. 448; *McKibben* v. *Oneida County*, 25 id. 361; *Tucker* v. *The City of Utica*, 35 id. 173; *Worden* v. *Oneida County*, id. 206.)

En el caso de *Tucker* v. *City of Utica* la corte se expresó como sigue:

''Está ya bien resuelto por las autoridades que cuando sólo parte de la propiedad ha sido pagada con dinero de pensión los tasadores tienen jurisdicción; y que es el deber del pensionista que alega exención presentar con claridad su situación el día fijado para oir quejas. (*Swift* v. *City of Poughkeepsie*, 37 N. Y. 511.) No consta que se haya hecho semejante objeción por el demandante con respecto a la tasación en cuestión.''

Puesto que la ley en que se basa el demandante en este caso ha sido transcrita literalmente de una ley de la Legislatura de Tennessee de 1873, titulada ''Una Ley para facilitar el cobro de rentas,'' citada en *Shelton* v. *Platt*, 139 U. S. 591, página 593, y en *Tennessee* v. *Sneed*, 96 U. S. 69, página 71, la interpretación que le ha dado la Corte Suprema de ese Estado no solamente es mucho más aplicable, sino que adquiere mayor fuerza de la bien conocida regla de interpretación de estatutos por la cual ''los estatutos que han sido aprobados originalmente en otro Estado al ser adoptados se considera que son tomados con la interpretación ya establecida que les han dado en el Estado de donde son transcritos.'' Sutherland sobre Interpretación de Estatutos, sec. 256, página 337.

Si seguimos esta regla en el presente caso, (y en vista de la marcada analogía entre la legislación existente en Ten-

nessee y en Puerto Rico en las respectivas fechas en que
fué aprobada la nueva ley, no vemos que exista alguna razón
sustancial para negarse a observarla) entonces desaparece
toda duda que pueda haber, por virtud de la decisión en el
caso de *Ward* v. *Alsup,* 46 S. W. 573, en cuyo caso la Corte
Suprema de Tennessee dijo lo siguiente:

"Ambos de estos casos son puramente acciones legales de acuerdo
con el estatuto y aunque una de ellas ha sido establecida en la corte
de equidad no hay cuestiones de equidad envueltas.   En ninguno
de ellos se hace ninguna alegación de que el demandante observó el
precepto del estatuto para corregir las tasaciones desiguales o exce-
sivas compareciendo ante la junta de igualamiento de su condado
y presentando quejas a dicha junta antes de pagar sus contribuciones
lo que consideramos un requisito previo indispensable al estableci-
miento de cualquier acción meramente legal sobre devolución de con-
tribuciones pagadas bajo protesta admitiendo que la acción sea ver-
dadera y *bona fide.*   Por la ley de 1895, caso 120, sección 50, las fa-
cultades y deberes de la junta de igualamiento del condado se deter-
minan y definen y es el deber de esa junta, entre otras cosas, el exa-
minar, comparar e igualar las tasaciones, oir y resolver quejas que
presente cualquier persona que se sienta perjudicada debido a dicha
tasación, y corregir todos los errores cuando a su juicio así lo exija
la justicia, etc. Shannon's Code, sección 802.   Por la misma ley,
sección 62 (Shannon's Code, sección 807), a la junta de igualamiento
del Estado se le exige que proceda al igualamiento del valor total
de los bienes de los varios condados, y rebaje o aumente las tasa-
ciones según lo estimen convenientc.   Se verá, pues, que los deman-
dantes tenían el remedio de una junta de igualamiento ante la cual
sus quejas podían o debieron ser formuladas a falta de algunas
razones en equidad por lo que no debía hacerse; y esta junta tenía
facultades amplias para considerar y rectificar sus perjuicios indi-
viduales.   No existe nada en los autos que muestre que se hizo alguna
solicitud o presentó ninguna queja a la junta, o que alguno de los
demandantes compareciera en alguna ocasión ante la junta.

"Se ha resuelto que, cuando por un estatuto válido se crea con
facultades para actuar una junta de tasadores o igualadores, el con-
tribuyente que deje de acudir a dicha junta en solicitud de un reme-
dio cuando ésta tiene poder para actuar no puede pagar bajo protesta
y luego recobrar las contribuciones en una acción establecida con tal
fin   Se dice que es una regla bien establecida en todas partes que

debe hacerse solicitud al tribunal establecido por el estatuto con tal objeto, si alguno ha sido creado, antes de poderse tomar ninguna acción para recobrar dichas contribuciones. * * *.

"Es cierto que el estatuto de Tennessee concede un remedio al contribuyente pagando bajo protesta si creyó que su contribución era ilegal, injusta, o excesiva, o en contra de algún estatuto o cláusula de la Constitución, estableciendo entonces una acción contra el colector para recobrar la suma que así fué exigida injustamente; pero este estatuto claramente tenía en cuenta que el contribuyente, en caso de tasaciones hechas por los funcionarios de la propiedad en forma irregular, indebida o excesiva, debe haber formulado su queja ante la junta nombrada por el estatuto para oir tal queja, o investigar respecto a la tasación y la forma en que se hace, y si es o no excesiva. El comisionado del condado no tiene facultad para hacer esto sino solamente para cobrar aquellas contribuciones que vienen a sus manos ya tasadas, excepto en ciertos casos de propiedad que ha sido omitida, etc.

"Si una parte pretende impugnar todo el sistema de tasaciones o la tasación especial de su propiedad mediante la acción del estatuto para recobrar la suma que le fué exigida, debe ponerse en condiciones de poder hacer esto presentando su queja, primero a la junta creada para oir dichas quejas de acuerdo con la ley, y dentro del término fijado por el estatuto. El estatuto que dispone que el contribuyente debe pagar sus contribuciones bajo protesta y entonces establecer su acción para recobrar dichas contribuciones, y que este remedio será exclusivo tuvo por objeto impedir que fueran obstaculizadas las contribuciones por *injunctions* y otros procedimientos de manera que las rentas del Estado no estuvieran mezcladas con litigios; pero la teoría era que si la tasación había llegado a tal punto que la contribución estaba fijada y podía cobrarse, el contribuyente debía entonces pagar y hacer uso de su remedio para recobrarlas. Pero para tener este remedio a falta de fraude u otro fundamento de intervención en equidad debe el contribuyente haber utilizado aquellas disposiciones del estatuto por las que hubiera podido corregirse la injusticia que se alega antes de que la contribución fuera fijada y pudiera cobrarse. Puesto que ninguna de las partes que se quejan en estas causas alega que alguna vez haya comparecido ante una junta de igualamiento y tratado de rectificar su tasación por la supuesta ilegalidad, desigualdad y exorbitancia, ninguna ocupa tal actitud que promueva las importantes cuestiones relativas a las tasaciones, que han sido presentadas por ellas, y que se suponían

estar envueltas, y sobre las cuales se solicita que la corte tome acción; y ya que las acciones sean verdaderas o solamente simuladas, de buena fe o establecidas con un fin ulterior, no pueden ser consideradas por los méritos de las cuestiones presentadas; y sin ir más lejos en la investigación de la forma y objeto porque fueron establecidas, la sentencia en una y el decreto en la otra deben ser confirmados, y los casos desestimados, por no haber el demandante hecho uso del remedio preliminar y claro que la ley dispone para que sean corregidas las tasaciones.''

El artículo 303 del Código Político prescribe lo siguiente:

''Que siempre que el Tesorero de Puerto Rico tuviere conocimiento de que alguna propiedad inmueble sujeta a contribución haya sido omitida en la tasación de la propiedad de cualquier contribuyente durante cualquier año o años económicos, a partir del año económico de 1901–02 será su deber hacer que se tase inmediatamente por los años durante los cuales dicha propiedad no ha sido tasada, y agregarla a la lista de contribuciones por dichos años, procediendo al cobro de las contribuciones que a ella corresponden, así como también al cobro de todos los recargos en que se hubiere incurrido por no haber pagado prontamente las referidas contribuciones, lo que hará en la misma forma en que recaude las demás contribuciones prescritas en este título: *Disponiéndose, sin embargo,* que siempre que se hubiere omitido la tasación e imposición de contribuciones sobre dicha propiedad, y el dueño de ella no fuere culpable de esa omisión, tendrá facultad el Tesorero de Puerto Rico para, a su juicio, condonar en todo o en parte los recargos consiguientes. En todo caso en que se hubiere tasado propiedad, mueble o inmueble, durante un año económico o durante varios, pero se hubiere hecho la tasación a nombre de otra persona distinta del verdadero dueño o poseedor de dicha propiedad, o se hubiere hecho en forma tal que fuese nula, el Tesorero de Puerto Rico cancelará dicha tasación, la eliminará de las listas de contribuciones, y retirará y cancelará los recibos de contribuciones o borderós correspondientes a la misma, procediendo a una nueva tasación de dicha propiedad y a corregir las listas de contribuciones de acuerdo con ella, así como a recaudar, en cuanto resultaren pendientes de pago, las contribuciones correspondientes a la antedicha nueva tasación en la misma forma que se dispone en esta sección para la tasación y recaudación de contribuciones sobre propiedad inmueble que indebidamente no se hubiere tasado.''

El artículo 308 del Código Político, "con el propósito de revisar la tasación y retasación de la propiedad inmueble y mueble" y "con el fin de resolver todas las reclamaciones que presenten los contribuyentes con referencia a la tasación de sus propiedades," creó "una junta permanente de revisión e igualamiento, compuesta del Tesorero de Puerto Rico, el Secretario, el Comisionado del Interior, y otras dos personas, ciudadanos de Puerto Rico, versadas en asuntos relativos al valor de la propiedad en Puerto Rico."

El artículo 309 prescribe que:

"Cualquier persona perjudicada por la decisión del tasador respecto a la valuación de su propiedad puede elevar queja por escrito sobre el particular a la susodicha junta de revisión e igualamiento, debiendo consistir la referida queja de una exposición que especifique terminantemente cuáles son los errores de que se queja, consignando los hechos conducentes a su rectificación   *   *   *.

Las facultades de la junta se describen en el artículo 310, a saber:

"La citada junta de revisión e igualamiento oirá la apelación y resolverá de nuevo cualquier cuestión que se presentare ante la junta y que se relacione con la mayor o menor cantidad en que puede tasarse la finca para imponerle las contribuciones, o con el importe de ésta; y al hacer constar dicha resolución corregirá los libros de tasaciones o las planillas de acuerdo con lo que se haya decidido, o dispondrá que se haga la corrección de referencia por el Tesorero, si los citados libros o planillas se hallaren en poder de éste. La referida junta tendrá poder para suprimir, disminuir o aumentar las valuaciones hechas en cualquier planilla que le haya sido enviada, háyase presentado o no queja alguna con relación a la misma; y para decidir toda otra queja con respecto a la imposición de contribuciones y para corregir todos los errores que haya, a medida que se le indiquen;   *   *   *."

La ley titulada "Ley disponiendo el pago de contribuciones bajo protesta, estableciendo un procedimiento para exigir la devolución de las mismas y para otros fines," aprobada en 9 de marzo de 1911, dispone la forma de reintegrar

contribuciones que han sido cobradas indebida o ilegalmente cuando han sido pagadas bajo protesta. Aunque todos los demás remedios contra el ''cobro'' ilegal de contribuciones han sido suprimidos expresamente, nada se dice respecto a tasación, ni se hace ninguna referencia a las secciones del Código Político que han sido citadas anteriormente, y hasta el precepto que ordinariamente se usa para la derogación de ''toda ley o parte de ley que a la presente se opusiere,'' brilla por su ausencia.

El Código Político en los artículos citados trata del mecanismo de la tasación de la propiedad y del procedimiento para obtener un remedio administrativo contra todas las equivocaciones o errores de criterio en cuanto a este particular; y la ley de 1911 del cobro de la contribución que se reclama o alega está vencida con sujeción al posible derecho de recobrarlas el contribuyente en una acción establecida con tal objeto. Según los términos del artículo 330 del Código Político las contribuciones impuestas por el artículo 285 de dicho código serán pagaderas semestralmente por adelantado, los días primero de julio y enero de cada año, al terminarse las planillas en la forma prescrita por el artículo 314, que dispone, entre otras cosas, que ''las planillas o listas de contribuciones encuadernadas, constituirán el libro de tasación del distrito a que se refieran, de acuerdo con el cual se impondrá y recaudará la contribución prescrita por la ley; y se presumirá definitivamente válida por toda corte y tribunal, no alterándose ni desestimándose a menos que lo fuere para corregir un error manifiesto   *   *   *.''

No podemos creer que nuestra Legislatura al adoptar el estatuto de Tennessee en el año 1911 tuvo la intención de renunciar a la teoría de la ley original como fué enunciada por la Corte de Tennessee en lo que respecta al efecto que quiso dársele a la anterior legislación en Tennessee que es muy parecida a la nuestra, para eliminar así prácticamente a la junta de revisión e igualamiento como factor en la tasa-

ción de la propiedad, ya por la sustitución de la acción para exigir la devolución de contribuciones que han sido pagadas bajo protesta, por el recurso administrativo a dicha junta en cuestiones que están claramente comprendidas en su jurisdicción, o mediante el establecimiento de un remedio meramente alternativo, con el fin de que fuera adoptado uno u otro procedimiento indistintamente a capricho del contribuyente.

La ley claramente y del modo más enfático niega la idea de algún remedio alternativo en cuanto a cuestiones que están dentro de su alcance y poco o nada contiene donde pueda fundarse una verdadera teoría respecto a la derogación tácita de alguna parte o porción del Código Político que sea pertinente a la cuestión que aquí está envuelta. El exigir al contribuyente que agote primero su remedio administrativo no puede producir opresión ni injusticia para dicho contribuyente y no envuelve menoscabo o privación de su derecho bajo la más reciente disposición. Si en un caso adecuado y sin razón o excusa deprecia él la oportunidad de establecer el recurso administrativo, entonces el cobro subsiguiente que se le haga de la contribución, no es ilegal, ni indebido, ni injusto.

La demanda sólo presenta una cuestión de hecho que puede resolver fácilmente el tasador en persona y que es especialmente susceptible de poder ser resuelta en apelación por la Junta de Revisión e Igualamiento y en dicha demanda se deja de explicar enteramente el motivo de no haberse establecido dicha apelación, o de justificar la razón que hubo para acudir a las cortes a falta de una resolución administrativa final en sentido adverso, de dicha cuestión, que haya sido obtenida en primer término.

Claramente que en ciertas circunstancias concebibles que no constan en el presente caso podría establecerse una acción sin la necesidad de un recurso administrativo previo. Tales casos se resolverán según se presenten. La simple cuestión

de si las contribuciones sobre cierta finca, que se admite está sujeta a la facultad de poder ser tasada han sido o no incluídas en la tasación de una finca colindante de mayor cabida, y si han sido satisfechas anteriormente en unión y como parte de las contribuciones correspondientes a dicha finca de mayor cabida, ciertamente que no constituye una excepción a la regla general.

La sentencia debe ser confirmada.

*Confirmada la sentencia apelada.*

Jueces concurrentes: Sres. Asociados del Toro y Aldrey.

El Juez Presidente Sr. Hernández no intervino en la resolución de este caso.

Juez disidente: Sr. Asociado Wolf.

### OPINIÓN DISIDENTE DEL JUEZ ASOCIADO SR. WOLF.

Me parece que la ley de marzo 9, 1911, es por su faz muy clara al conceder al contribuyente el derecho de establecer una acción contra el Tesorero si ha sido cobrada indebidamente una contribución. Da el derecho al contribuyente y no existe precepto alguno en ninguna parte de la ley que le exija el tener que apelar a la Junta de Revisión e Igualamiento. Con anterioridad a la referida ley de marzo 9, 1911, dicha apelación era en un gran número de casos el único remedio que tenía el contribuyente. Pero ahora la ley en varias partes concede a dicho contribuyente un remedio mediante acción en *todos los casos* de contribución indebida si primeramente satisface sus contribuciones bajo protesta. El pago de las contribuciones bajo protesta es la condición esencial precedente. Después del pago de la contribución bajo protesta en caso de tasación indebida nace un remedio a favor del contribuyente mediante acción de conformidad con el claro texto de la ley. No veo razón para que tenga que agregarse otra condición precedente.

Pero se dice que dicho estatuto fué tomado del de Tennessee, y que debemos seguir la interpretación que se le ha dado por la corte más alta de ese Estado y se cita el caso de *Ward* v. *Alsup,* 46 S. W. 573. En lo que respecta al estatuto mismo no se interpreta éste en ese caso. Se dijo en ese caso que bajo el sistema de contribuciones en Tennessee el contribuyente tiene primeramente que agotar su remedio por la vía gubernativa. La decisión es una interpretación de todo el sistema de contribuciones en Tennessee y no del estatuto mismo. Supongamos, por ejemplo, que no hubiera habido ninguna junta administrativa de revisión en Puerto Rico y que todavía hubiéramos adoptado el estatuto de Tennessee. No hubiera habido palabras ambiguas en él y, por tanto, ninguna base para su interpretación. La regla de interpretación a que se refiere la opinión de la mayoría del tribunal es una que según la entiendo hace referencia a la interpretación de las palabras del estatuto mismo. Como quiera que sea la regla de interpretación no debe ésta ser observada irreflexivamente en todas las circunstancias. *(Cou- lam* v. *Doull,* 133 U. S. 216; *Whitney* v. *Fox,* 166 U. S. 646, 647. En este último caso la Corte Suprema de los Estados Unidos se negó a quedar obligada por virtud de la interpretación que se dió a un estatuto en California después que dicho estatuto había sido adoptado en Utah cuando únicamente había un caso en California y estando la decisión de Utah en armonía con el claro significado del estatuto. La citación en este caso es idéntica al parecer. Creo que la intención de la legislatura tomando en consideración las palabras del estatuto, era el regular todos los casos de contribuciones ilegales. Siento que varias circunstancias me hayan impedido de presentar una opinión disidente más extensa, pero como disentí del criterio de la mayoría deseaba indicar brevemente mis razones.