IN THE MATTER OF THE ESTATE OF A. J. STEVENS, DECEASED.

GIFT — INTENT OF DONOR — MAXIM. — The intent of the donor of a gift is most to be regarded, within the rule, *Cujus est dare, ejus est disponere.* The giver of a gift has the right to regulate its disposal and to designate the donee.

ESTATES OF DECEDENTS — ACCOUNT OF EXECUTRIX — GIFT TO WIDOW OF DECEDENT. — A gift made to the widow of a decedent personally, by his former employers, of an amount which would equal his salary for two months if he had continued to live, is not chargeable to her as executrix in her account of the estate, regardless of whether she knew it was a personal gift to her or not, if it appears to be the clear intent of the donor to make it such.

ID. — ALLOWANCE TO WIDOW — PROFITS NOT CHARGEABLE TO HER AS EXECUTRIX. — The widow of a decedent is entitled to a reasonable provision for her support, and the court is not restricted to a bare support, but in making the allowance should take all the circumstances into consideration, and have regard to the mode in which she lived during the lifetime of the decedent, and the sufficiency of the estate to pay the amount allowed. She is not chargeable as executrix for profits received from the subletting of rooms in a house hired by her, the rental of which is paid out of her monthly allowance.

ID. — FINALITY OF ALLOWANCE — APPEAL — POWER OF PROBATE COURT — FRAUD. — The allowance to the widow is not reviewable after the time has elapsed for appeal from the order, as it then becomes final, and the power of the court over it is at an end. The court below cannot sit as an appellate court to review its own orders, though it may be that if the court has been imposed upon it can change the order to make it conform to a fair determination, on facts studiously withheld being made to appear. But if it has only the same facts before it on which it first acted, it cannot change or modify the order in settling the final account of the executrix.

WILL — INTENTIONAL OMISSION OF CHILD — EVIDENCE. — Evidence of the declarations of the testator as to his intention to omit any of his children from his will is not admissible. In order to disinherit a child whose name is omitted from the will, it is not sufficient merely to state that the whole of his property is devised to his wife, but the words of the will must show that the testator had the child in mind, and must indicate directly, or by implication equally as strong, that he intended to omit such child from the will.

ADOPTION OF CHILDREN — POWER OF LEGISLATURE — JUDICIAL POWER — CONSTITUTIONAL LAW. — The legislature has full power to regulate the adoption of children, and may invest any person, or officer, or court with the power of receiving, witnessing, and declaring the adoption, and prescribe the form of adoption. The matter of adoption belongs to the legis-

lative, and not to the judicial, department of the government; and though the act of passing upon the adoption may be judicial in the sense of being an act of judgment, that does not make it any part of the judicial power spoken of in the constitution, and by it vested in courts. The Civil Code conferring the power of adoption upon the judge as distinguished from the court is constitutional.

APPEAL from a decree of the Superior Court of Sacramento County settling the final account of an executrix and distributing the estate of a deceased person.

The facts are stated in the opinion of the court.

*S. C. Denson*, and *C. H. Oatman*, for Appellant.

*Catlin & Blanchard*, for Respondent.

THORNTON, J. — Appeal by executrix, Lydia M. Stevens, from a judgment settling her accounts as executrix of the above-named decedent.

The appellant is the widow of the testator. The testator died on the 11th of February, 1888, and she was appointed and qualified as executrix of the last will of the testator on the 17th of March following. The testator was for many years prior to his death in the employment of the Southern Pacific Company as its general master-mechanic, at a salary of five hundred dollars per month. He had drawn his salary for the month of January, 1888, and his full salary for the month of February was paid in the usual mode, without any deduction on account of his death on the eleventh day of that month. On the 17th of June, 1888, the sum of one thousand dollars was paid Mrs. Stevens by the company. On application of May S. Hubbard, Mrs. Stevens was charged with this sum as part of the estate of her testator. This is assigned here as error.

On consideration of the evidence, we are of the opinion that the point is well taken. It was paid to Mrs. Stevens on a voucher, of which the following is a copy:—

"SOUTHERN PACIFIC COMPANY,
"SAN FRANCISCO, June 7, 1888.
"To MRS. A. J. STEVENS, DR.

"For amount allowed, which would equal the salary of the late A. J. Stevens, Esq., for the months of March and April, 1888, two months, at five hundred dollars,— one thousand dollars.

"SAN FRANCISCO, June 11, 1888.

"Received from Southern Pacific Company one thousand dollars in full for above account.

[Signed] "MRS. A. J. STEVENS."

There are several indorsements in this paper; among others, these: "Name, Mrs. A. J. Stevens"; "For allowance."

The language of the voucher indicates, unmistakably, an allowance by the company. There was no obligation on the company to pay it. It was clearly a gift by the company. The allowance is clearly to Mrs. Stevens. The language used is, "To Mrs. A. J. Stevens, Dr."; not to Mrs. Stevens, executrix, or as executrix of her deceased husband. It does not purport to be for salary. The amount is fixed by the salary which the testator would have earned had his services continued during the months named in the voucher. The salary is referred to for the sole purpose of fixing the amount.

We see nothing in the other evidence changing this purport of the voucher. It is all consistent with the fact that the allowance or gift was made to Mrs. Stevens personally, and this, we think, the evidence clearly shows. It was intended by the company as a grateful recognition of the services of one who had served it long and faithfully, to whom its representatives had no doubt been strongly attached, and was with great propriety made to the one of all the world who most felt his loss.

It makes no difference that Mrs. Stevens did not know whether it was a gift to her or not. It was all the more

gracefully done in that the fact that it was a gift was veiled from her. It was made to her in the mode employed that she might feel no embarrassment in accepting it. It thus shocked no feeling of the recipient, and the gift was enhanced in her estimation when she regarded it as a tribute to the worth of one who had for long been to her the cherished object of honorable pride and devoted affection.

The intent of the donor to make a gift to Mrs. Stevens is that which is the most to be regarded, within the rule, *Cujus est dare, ejus est disponere.* The giver of a gift has the right to regulate its disposal (Broom's Legal Maxims, 444); *a fortiori* has he a right to designate the donee. Of the intent of the donor here, we think there can be no doubt.

We think the court erred in charging Mrs. Stevens with this sum.

In fixing the allowance to the widow, the sum of two hundred dollars a month for twelve months was designated.

It appears from the bill of exceptions that Mrs. Stevens lived in a hired house, for which she paid the monthly rent of fifty-five dollars, and that she had, during the period for which this allowance was made, rented out rooms in the house, for which she received the sum of three hundred dollars.

With this last sum she was charged as executrix by the court below.

It is urged that this charge was erroneous, and we are of that opinion.

The widow is entitled to a reasonable provision for her support, to be allowed by the superior court, or a judge thereof. (Code Civ. Proc., sec. 1464.) In making this allowance the court must take into consideration all the circumstances bearing upon the reasonableness of the amount to be allowed. No doubt this was done in this case. The court is not restricted in making

this allowance to a bare support of the widow. Regard should be had, and no doubt was had, to the mode in which she lived during the lifetime of her husband. Such regard should be had in a case like this, when it appeared without doubt that the estate was amply sufficient to pay the amount allowed. We say no doubt this was done when the court originally determined what the allowance should be. It appears further, from this bill of exceptions, that, on the hearing at which this allowance was made, the court, among other things, heard and considered evidence to the effect that the rental of the house which was being paid by the executrix was the same paid by the deceased husband in his lifetime, and that the rooms were rented by the executrix during the time she was receiving this allowance.

The court, having considered all these facts, made the order of allowance.

Why should not this order be held final, unless facts not disclosed to the court when the order was made subsequently are brought to the attention of the court? The order is appealable (Code Civ. Proc., sec. 963, subd. 3), and we are of opinion it should be regarded as final. On an appeal from the order of allowance, all these facts could have been brought to the attention of this court, the ruling reviewed, and the error, if any, corrected. The time for appeal was allowed to pass, and under such circumstances the power of the court over its order is at an end. The court below cannot sit as an appellate court to review its own orders.

It may be that if it had appeared that the court below had been imposed on by a studied withholding of material facts bearing on the subject-matter of inquiry, the court might deal with the order, and change it so as to make it conformable to what would have been a fair determination on the facts withheld being made to appear. But there is no such case before us; all the facts on which the court acted were before it when it first acted.

Under these circumstances, we think the charge which involved a change in the order should not have been made.

We add, nor do these facts show that the order of allowance when originally made was not reasonable. It was none the less reasonable because the widow elected to deprive herself of comforts or conveniences to which she was entitled, and in the exercise of a judicious and commendable frugality have incremented her income by hiring to others some of her income. This does not show, or tend to show, that the court below in its order of allowance lent any countenance to a needless waste of the estate then in the course of administration.

There is also an appeal in this case from the judgment distributing one fourth of the estate to Mrs. May S. Hubbard.

Mrs. Hubbard's claim is based on the fact that she was unintentionally omitted from the will of her father, the decedent above named.

The will, which was olographic, is as follows: —

"Considering the uncertainty of life, being of sound mind, and enjoying good health, I make this my will. I will to my wife, Lydia M. Stevens, all of my property, of every kind and nature. Also, all moneys that may become due at my death, as insurance policies held by me in any life insurance company or association.

"She is to collect, for her sole use and benefit, all moneys that may become due at the time of my death, or that may become due thereafter.

"I request, however, that she will set aside and cause to be invested in some good and safe interest-paying sureties one thousand dollars ($1,000) for the benefit of my grandson, William A. Stevens, both principal and interest accumulations to be paid to him when he shall have arrived at the age of twenty-one years; but in this matter my wife may use her own judgment.

"I appoint my wife, Lydia M. Stevens, sole executrix of my estate, to act without bonds.

"Andrew Jackson Stevens.
"Sacramento, September 22, 1885."

At the time the will became operative by the death of the testator, in February, 1888, the following section of the statutory law of the state was in force. The section referred to is embodied in the Civil Code and numbered therein 1307.

"When any testator omits to provide in his will for any of his children, or for the issue of any deceased child, unless it appears that such omission was intentional, such child, or the issue of such child, must have the same share in the estate of the testator as if he had died intestate, and succeeds thereto as provided in the preceding section."

Mrs. Stevens offered to show by the declarations of the testator, made contemporaneously with the writing and execution of his will, that his children were intentionally omitted.

The argument that the intent of the testator is apparent on the face of the will; that the will clearly discloses his intent to leave his entire estate to his wife, and thus displaces any intent to leave it to any one else, and that those declarations are consistent with the intent disclosed by the words of the will, and do not alter or add to the will in any respect,—has great weight. It does seem to be illogical to declare that the intent of the testator must be declared in the will, and still that you cannot show any fact or declaration consistent with and supporting that intent. But this court, in April, 1868 (see *Matter of Estate of Garraud*, 35 Cal. 339), held that such declarations were inadmissible under a statute then in existence substantially the same, in fact almost identical in words with the one in operation when the will involved in this case was executed.

The precise question made here has not arisen in this state since the case of Garraud's estate was decided. It has been accepted as a sound and correct exposition of the law ever since it was decided, as is apparent from *Estate of Utz*, 43 Cal. 201; *Bush* v. *Lindsey*, 44 Cal. 121; and *Estate of Wardell*, 57 Cal. 484. *Pearson* v. *Pearson*, 46 Cal. 609, was on another section of the statute. The case of *Wilson* v. *Foskett*, 6 Met. 400, 39 Am. Dec. 736, is much relied on by counsel for appellant. That case was commented on in the case in 35 California, and shown, as clearly appears, to have been decided on a statute very different from the statute in this state; as was *Whittmore* v. *Russell*, decided by the supreme court of Maine, and reported in 14 Am. Rep. 197. This last case seems to have been rested very much on the authority of *Wilson* v. *Foskett, supra*.

In line with the decision in Garraud's estate are *Bradley* v. *Bradley*, 24 Mo. 311; *Pounds* v. *Dale*, 48 Mo. 270; and *Chase* v. *Chase*, 6 R. I. 407. Each of these cases just cited refers to and comments on *Wilson* v. *Foskett, supra*, as rested upon the peculiar language of the Massachusetts statute.

The decision of this court in Garraud's case has stood too long without challenge to be overruled without very strong reasons. It is sustained by very powerful reasoning in the able opinion of Justice Crockett. We think it our duty to follow it, and in accordance with the rule there declared we must hold that the court below did not err in excluding the offered declarations of the testator.

It is further argued that the will itself shows on its face that the omission of Mrs. Hubbard in the will was intentional. As to this contention, we think that the significance of the decision of this court in Garraud's estate is, that it must appear on the face of the will, and it must then appear from words which indicate such intent directly, or by implication equally as strong. Any

other rule would lead to guesses or to inferences merely conjectural, which would be too unsubstantial to base a judgment on. We do not think that we can say with any reasonable certainty that the words used in the will indicate that Mrs. Hubbard was in the mind of the testator when he wrote his will, and that he intentionally omitted to mention her. We think that the correct rule is, that the words of the will must show, as above pointed out, that the testator had the person omitted in his mind, and having her so in his mind, had omitted to make any mention of her.

The rule here laid down is plain and simple, and we think in accordance with the statute, as interpreted in the Garraud case. It is an easy matter to put the question beyond a doubt by naming the children or grandchildren in the will, with a nominal legacy, or none at all, from which it will clearly appear that these persons are in the mind of the testator, and therefore the omission to leave them anything must have been intentional.

We are of opinion that the court below did not err in holding that the will itself did not show on its face that the omission of Mrs. Hubbard was intentional.

We add that we have examined the cases cited by counsel on the point just discussed, and make no further allusion to them, for the reason that, on questions of mere construction, one case, unless in all respects similar to the case under discussion, cannot be regarded as an authority. None of the cases cited are similar to the case here.

Another point remains to be considered.

In 1878, Andrew D. Billings, son of May S. Billings (the May S. Hubbard, a party to this case), and her then husband, A. D. Billings, was, with all the forms of law required by division 1, part 3, title 2, chapter 2, of the Civil Code, adopted by the testator and his wife as their child. The adoption was made before Hon. R. C. Clark, county judge of Sacramento County.

It is here contended that the statute under which this adoption was made is unconstitutional.

It is said that the adoption of the child was a judicial act, and therefore must be done by a court, and cannot by the constitution be done by a judge, as was the case here.

The adoption of children is purely a matter of statute, pertaining to the legislature, with which a judge or a court has nothing to do, unless the power is conferred on them by statute. The matter of adoption belongs to the legislative, and not to the judicial, department of the government.

We know of no rule of law which ever enabled any person or tribunal, whether notary public, clerk of a court, judge, or court, to perform the ceremony of adopting a child, unless such authority was conferred by a legislature.

As the legislature has full power over this matter, it may invest any person, or officer, or court with the power of receiving, witnessing, and declaring the adoption. It may prescribe what that ceremony shall be, and before whom it is to be celebrated. It may make the ceremony so simple that its celebration only requires the consent in writing of the parents of the child, and the acceptance of such consent by the person desiring to adopt, and filing such paper with a public officer. These rules are so evident that it is unnecessary to refer to any authority to sustain them. The authorities on the subject are abundant. (See *Abney* v. *De Loach*, 84 Ala. 393; *Succession of Vollner*, 40 La. Ann. 593.)

The case of *Spencer etc. Co.* v. *Vallejo*, 48 Cal. 70, related to the exercise of the right of eminent domain, which can only be exercised through the medium of a court. The exercise of the right of eminent domain has always been had by means of courts invested with judicial power. It has never been exercised otherwise in England or any of the states of the American Union, that

we are aware of. The exercise of this power may be regulated and restricted by the legislature, but its exercise is to be had through the judicial tribunals of the country. The case referred to, involving in its very essence the exercise of the judicial power vested in courts by the constitution, is no authority in this case, where no judicial power is called for, and the whole matter is intrusted by a valid law to a designated officer or person. (*Weber* v. *County of Santa Clara,* 59 Cal. 265; *Trahern* v. *San Joaquin Co.,* 59 Cal. 320.)

It may be and is true that the county judge in this case must have exercised judgment, and was authorized by the statute to employ his judgment. This may be so, and in such case the act is one of judgment, and in that sense *judicial;* but this does not make it any part of the judicial power spoken of in the constitution, and by it vested in courts. The distinction is pointed out in *People* v. *Oakland Board of Education,* 54 Cal. 377.

It may be conceded that the legislature could have made this adoption a judicial case, and the jurisdiction over it conferred on a court. It may be further conceded that then the exercise of the power by the court would have been an exercise of the judicial power vested in it by the organic law. But the legislature has been careful here to place this jurisdiction in a person designated as county judge, and has not conferred it on a court. The legislature has done all in its power to signify that it was not dealing with any matter pertaining to the judicial power or the judicial department by investing a county judge with jurisdiction over the matter.

The court below erred in holding the statute in regard to adoption unconstitutional and void. A. D. Billings was legally adopted by Mr. and Mrs. Stevens, and has all the rights springing from such adoption.

, The judgment or decree of the court below is reversed,

and the cause remanded, to be proceeded with in accord-
ance with the views expressed in this opinion.

So ordered.

McFarland, J., and Sharpstein, J., concurred.

Hearing in Bank denied.