IN THE MATTER OF THE ESTATE OF JEROME B. FARGO,
DECEASED.

[No. 16,881; January 31, 1903.]

**Family Allowance.**—It Seems that Minor Grandchildren, as well as minor children, may constitute the "family" for whom an allowance may be made from the estate of the deceased ancestor.

**Family Allowance—Conclusiveness of Order.**—An order for a family allowance, though erroneous, becomes conclusive if not appealed from.

**Executors—Payment of Stock Assessments.**—The payment by an executor of assessments on speculative shares of stock purchased by his testator is not encouraged by courts, and usually is at his hazard, and justified only by a successful issue of the investment.

William M. Madden, for the plaintiffs.

Eugene W. Levy and Andrew G. Maguire, for the creditors.

COFFEY, J.   Objections by defendant to certain expenditures made by deceased executor, Calvin F. Fargo, in the administration of the estate of Jerome B. Fargo (1) to "Mrs. Fish on account of family allowance," and (2) for assessments on shares of stock of the Home Gold Mining Company.

The first item was paid under an order obtained upon a petition preferred by one Jennie F. Fish, which recited that she was a daughter of Jerome B. Fargo, deceased, and was then about forty-one years of age, and that during all of her life and up to and at the time of his death she lived and resided with him, and was entirely supported, maintained and cared for by him; that she was the mother of four minor children, issue of her marriage with Frank Fish, from whom she had been divorced for many years; that the names of the children were Jerome F., Henry K., George K., and Dudley F. Fish, aged respectively nineteen, eighteen, fifteen, and twelve years; that she and her said children, at the time of the death of said Jerome B. Fargo, and from their birth and during all their life, had lived and resided with him as and constituted and were his family, and were entirely supported, cared for, and maintained by him as his family, and were entirely dependent on him; that his estate had been appraised

at the sum of $40,000; that she had not nor had the said minors any money or means whatever wherewith to support or maintain themselves; that during his lifetime the cost and expenses of maintaining and supporting his said family exceeded $500 per month; that the sum of $200 per month would be a reasonable sum to be allowed to said family for their support and maintenance, and she asked that a family allowance to that amount from the date of his death, January 5, 1896, be made and paid out of the funds of the estate by the executor. An order was accordingly made on the seventeenth day of April, 1896, finding the facts as stated in the petition, and concluding that the petitioner and said children constituted the family of decedent, and were his surviving family, and as such entitled to a family allowance. This order was obtained after a hearing in open court and the taking of the oral testimony of the petitioner on the fourteenth day of April, 1896, as appears by the minutes thereof, and the sum allowed was $200 per month, which was ordered to be paid by the executor to said petitioner out of the funds of the estate to be used and applied by her for the maintenance and support of said minors and said surviving family of the decedent.

This order and the payments made thereunder are now assailed by certain creditors intervening, for the reason that the items charged in said account as family allowance paid to Mrs. Fish are not proper or legal charges against said estate, because she is not a widow or minor child of the decedent and not entitled by law to a family allowance out of said estate; and these creditors contend that the order is void upon its face, and the court never had any jurisdiction, as the family allowance can only be for the benefit of the widow or minor children of deceased.

The statute law on this subject is gathered in chapter 5, article 1, title 11, part 3, sections 1464-1470, Code of Civil Procedure, "Of the Provision for the Support of the Family," in which it is provided that when a person dies leaving a widow or children they are entitled to a reasonable provision for their support, to be allowed by the superior court or a judge thereof, and if the amount originally set apart be insufficient, the court or judge must make such reasonable allowance

for the maintenance of the family as shall be necessary, according to their circumstances, during the progress of the settlement of the estate, which, in case of an insolvent estate, must not be longer than one year after the grant of letters.

The order in question, it is claimed by plaintiffs, is valid under section 1466, Code of Civil Procedure, because it was for the maintenance of the family of the decedent, within the meaning of the statute, as rationally interpreted and construed, which would include these minors, and plaintiffs draw on other statutory provisions to enforce their reasoning that the word "children" should be held to include grandchildren. In section 1465, Code of Civil Procedure, the court is authorized to set apart for the use of the surviving husband or wife or, if he or she be dead, to the minor children of the decedent, all the property exempt from execution, including the homestead selected, designated and recorded. Now, among the persons upon whose application a homestead is authorized to be selected, designated and recorded, and such "head of family" is expressly defined by the statute as "including within its meaning," are "every person who has been residing on the premises with him or her, and under his or her care and maintenance, either (1) his or her minor child or minor grandchild": Civ. Code, secs. 1260, 1261. In other words, minor grandchildren, as well as minor children, may in effect constitute the "family" for which one can lawfully claim a homestead, and why not, by parity of reasoning, a family allowance, which is comprehended within the same statutory system? But assuming, what this court might have held as an original proposition, that the word "children," as used in the statute here in question, cannot be construed as embracing "grandchildren," but that it comprises only the immediate "children" of decedent by nature or by adoption, it is claimed by plaintiffs that advantage may not now be taken of any error in that behalf because the order granting this family allowance not having been appealed from or in any way reversed, set aside or modified is now final and conclusive. The order making the family allowance in this case necessarily involved a determination either express or implied as to its subject matter and statutory propriety. It appears that there was a hearing in open court and an oral examina-

tion and a consequent judgment which carries with it all presumptions and intendments in favor of its validity. It must be presumed in its favor that its beneficiaries were within the scope of the statute. The question whether they were the minor children of decedent or not was a question of fact necessarily submitted to the court for determination upon the application for the allowance, and the court had jurisdiction to determine. Moreover, if the order for the allowance was made solely on the ground that, as a matter of law, such allowance was authorized because the word "children" in the statute is to be interpreted as including "grandchildren," or for some other reason, this was a question clearly within the jurisdiction of the court. Whether the question presented was one of fact or law, however, it was necessarily determined in applicant's favor in making the order of allowance, and such order, even though erroneous, being made in the exercise of jurisdiction and being appealable, and not appealed from, is now absolutely conclusive, and, in the absence of any charge of fraud or imposition, and no such allegation is made here, cannot be reviewed or impeached at law or in equity, the time for an appeal having elapsed; certainly it cannot be reviewed or impeached collaterally.

The facts and the law were before the court, and having considered both, the allowance was made. As the supreme court said in Re Stevens, 83 Cal. 326, 17 Am. St. Rep. 252, 23 Pac. 379, why should not this order be held final, unless facts not disclosed to the court when the order was made subsequently are brought to its attention? The order is appealable and now should be regarded as final. On an appeal from the order of allowance, the facts could have been made known to the appellate court, the ruling reviewed, and the error, if any, corrected, but the time for appeal was allowed to pass, and in such circumstances the power of the court over its order is at end. The trial court cannot act as an appellate court to review its own orders. It might be that if it had appeared that the court was imposed upon, a change could be made, but there is no such case here. All the facts on which the court acted were before it when the allowance was granted; if there was error in the judicial conclusion the

remedy was by appeal; all parties were, constructively at least, before the court. It is too late now to complain.

As to the expenditures for assessments on shares of stock in the Home Gold Mining Company: In making these payments plaintiffs claim that the executor was, in substance and effect, simply continuing and protecting an investment already made by his testator; and if, in so doing, he acted in good faith and with ordinary prudence, the expenditures were proper and chargeable in his account, even though the stock may ultimately have turned out to be worthless, and the fact that the investment in such stock was made by the testator and was thus continued by the executor, should go far toward justifying the conduct of the latter.

Equity looks leniently on the conduct of a trustee who has acted in good faith and in the exercise of a sound discretion, although, in the light of subsequent events, the course pursued may turn out to have been unwise; but the payment of assessments on speculative shares is not encouraged by the courts, and is usually at the hazard of the executor and only justified by successful issue of the investment. Even a previous order of the court would afford no protection, except to exculpate the executor from any imputation of bad faith or improvidence. In the circumstances of this case there is much to justify the act of the executor in paying assessments on stock of which testator was the purchaser and which in the inventory was appraised at $27,000, originally, and later at $105,000, and consequently constitutes virtually the entire estate. I think a reservation should be made in the decree enabling plaintiffs to recover these payments out of the proceeds of the property itself.

---

An Order Granting a Family Allowance is appealable, and if no appeal is taken within the time limited by law, it becomes final and conclusive. Thereafter the probate court cannot review, suspend or vacate its order. Although it finds on a partial distribution that she to whom it has granted an allowance was not the widow of the deceased, the allowance cannot be collaterally attacked. And creditors who have allowed the time for appeal to pass by cannot object to the approval of an executor's account, showing the payment of a monthly allowance, on the ground that the estate was insolvent when the order therefor was made. It is not doubted, however, that the probate court, after having made an allowance, may modify it, should

the condition of the estate or the relation of the family thereto so change as to make such modification expedient, or that a court of equity, when the time for prosecuting an appeal has elapsed, may set aside an order for fraud in its procurement. An appeal from an order directing the payment of an allowance acts as a supersedeas, staying all further proceedings in respect to the matter involved. Hence a subsequent order of the superior court directing the administrator to make payment is beyond its jurisdiction, and subject to annulment on certiorari: 1 Ross on Probate Law and Practice, 489.