[No. 2512]

IN THE MATTER OF THE ESTATE OF MATT A. PARROTT, DECEASED.

[203 Pac. 258]

1. APPEAL AND ERROR—ERRORS AGAINST RESPONDENT CONSIDERED IF APPELLANT'S COMPLAINT WOULD NOT SUPPORT JUDGMENT FOR HIM.

Though the appellate court will not ordinarily consider errors committed against respondent, it will do so if the complaint is so defective that it would not support any judgment in appellant's favor.

2. BASTARDS — TO RECOVER ESTATE NOTWITHSTANDING OMISSION FROM WILL, ILLEGITIMATE CHILD MUST ALLEGE FACTS ESTABLISHING LEGITIMATION.

Before a testator's illegitimate child may recover his entire estate under Rev. Laws, 6216, notwithstanding her omission from the will, she must allege sufficient facts to establish her status as his adopted child, under section 5833.

3. BASTARDS — OBJECTION TO DISTRIBUTION OF ESTATE AMONG BENEFICIARIES OF WILL HELD SUFFICIENT TO SUPPORT CLAIM OBJECTOR WAS TESTATOR'S LEGITIMATED CHILD.

An objection by testator's illegitimate child to a petition for distribution of his estate among the beneficiaries of his will alleging that testator publicly acknowledged her, contributed food, clothing, etc., and sent her to school, held sufficient to bring her within the purview of Rev. Laws, 5833, relative to the legitimation of an illegitimate child.

Points decided

4. PLEADING — IN DETERMINING WHETHER ILLEGITIMATE CHILD
WAS INTENTIONALLY OMITTED FROM WILL, COURT CANNOT
CONSIDER FACTS ADMITTED BY DEMURRER, RELEVANT ONLY TO
CHILD'S LEGITIMATION.

In considering a demurrer to an objection by testator's
legally adopted illegitimate daughter to the distribution of
his estate among the beneficiaries of his will, from which she
was omitted, the court cannot consider, in determining
whether objector was intentionally omitted from the will
within Rev. Laws, 6216, facts stated in the objection as to the
circumstances surrounding objector's parentage, as indicating
that testator purposely omitted her from the will, such facts
being relevant only to establish her status as a legitimate
child, and the demurrer admitting the truth only of well-
pleaded facts.

5. DESCENT AND DISTRIBUTION—TO OVERTHROW PRESUMPTION THAT
CHILD'S OMISSION WAS UNINTENTIONAL, CONTRARY INTENT
MUST BE EXPRESSED OR SO STRONGLY IMPLIED AS TO RENDER
ANY OTHER CONCLUSION UNREASONABLE.

Before the presumption arising from Rev. Laws, 6216,
entitling a child unintentionally omitted from its parent's will
to the same share in his estate as if he had died intestate,
that such omission was unintentional, can be overthrown and
the contrary intention established, the intention to omit
must be expressed in the will or implied in language so
strong as to render any other conclusion unreasonable.

6. COURTS — ONE CASE, UNLESS SIMILAR IN ALL RESPECTS, NO
AUTHORITY ON QUESTIONS OF MERE CONSTRUCTION OF WILL.

On questions of mere construction of will one case, unless
in all respects similar to that under discussion, cannot be
regarded as an authority.

7. DESCENT AND DISTRIBUTION—WILL HELD NOT TO SUFFICIENTLY
INDICATE TESTATOR'S INTENTION TO OMIT CHILD.

Though every word or phrase of a will should be given
effect and harmonize with the rest, if possible, without
destroying the general intention, a will wherein testator
declared he had never been married and had no children
and disposed of all his property in detail to others *held* not
to indicate with sufficient certainty that he intentionally
omitted an illegitimate child from its provisions to bar her
right under Rev. Laws, 6216, to the entire estate; the scheme
of distribution being consistent with the statutory presump-
tion that she was unintentionally omitted, though testator
was of sound and disposing mind and under no restraint or
undue influence.

8. DESCENT AND DISTRIBUTION—EXTRINSIC EVIDENCE ADMISSIBLE TO
SHOW WHETHER CHILD WAS INTENTIONALLY OMITTED FROM
WILL.

Under laws such as Rev. Laws, 6216, providing that a
child omitted from a will shall be entitled to the same share

in testator's estate as if he had died intestate, unless such omission was intentional, extrinsic evidence is admissible to show whether such child was intentionally omitted.

APPEAL from Second Judicial District Court, Washoe County; *James A. Callahan,* Judge.

In the matter of the estate of Matt A. Parrott, deceased. Objection by Lucy Peggy Parrott Arzaga to a petition for distribution of the estate among the beneficiaries under the will. From a judgment dismissing the objection, objector appeals. **Reversed and remanded. Petition for rehearing denied.** (SANDERS, C. J., dissenting.)

*W. D. Jones* and *N. J. Barry,* for Appellant:

Questions decided against respondents cannot be taken advantage of by them on an appeal by the party in whose favor the ruling was made. "No error against respondents in the trial court can be considered on appellant's appeal." Coyle v. Lamb, 123 Cal. 264; County v. Bank, 127 Cal. 245; Benson v. Bunting, 141 Cal. 462.

The sole question for determination is whether or not testator intentionally omitted appellant from the provisions of his will. An illegitimate child who comes within the statute occupies the same position as a child born in wedlock. Rev. Laws, 5833; Estate of Wardell, 57 Cal. 484; Wolf v. Gall, 32 Cal. App. 295.

Was appellant the child of decedent, acknowledged by him as such, and did he intentionally omit her from the provisions of his will? An illegitimate child who comes within the statute occupies the same position as a child born in lawful wedlock. Rev. Laws, 5833; Estate of Wardell, 57 Cal. 484; Wolf v. Gall, 32 Cal. App. 295. For the purposes of the demurrer, it is admitted that appellant was the daughter of the decedent, duly acknowledged as such. "It is a universal rule that a demurrer is an admission of the truth of all of the facts properly averred in the complaint demurred to."

21 R. C. L. 70; 31 Cyc. 333; Levy v. Ryland, 32 Nev. 460. Appellant was unintentionally omitted from the provisions of the will. "The general presumption is that the omission was unintentional." 2 Alexander on Wills, sec. 636. "The burden of proof being on those who oppose the claim of the omitted child" (14 Cyc. 60), the intention must be determined from the language of the will. In Re Stevens, 83 Cal. 329.

The question is not as to the disposition that testator made of his property, but as to whether he had appellant in mind and purposely omitted her from the provisions of his will. Rev. Laws, 6216; Carpenter v. Snow, 72 Am. St. Rep. 576. "It is an easy matter to put the question beyond a doubt by naming the children * * * with a nominal legacy, or none at all, from which it will appear that these persons are in the mind of the testator, and therefore the omission to leave them anything must have been intentional." In Re Stevens, supra.

Testator is presumed to have known the law, and the legal presumption is that he meant the consequences of his act. Luris v. Radnitzer, 57 Am. St. Rep. 160; Estate of Salmon, 107 Cal. 614; Estate of Stevens, 83 Cal. 322; Bush v. Lindsay, 44 Cal. 121; Luris v. Radnitzer, supra; Stebbins v. Stebbins, 34 Am. St. Rep. 345; Hargidene v. Plute, 27 Mo. 423; Gage v. Gage, 29 N. H. 523; Bower v. Bower, 31 Pac. 598; Estate of Ross, 140 Cal. 282; Hollingsworth's Appeal, 51 Pa. St. 518. "The mention of a child unprovided for should be more than a mere meaningless reference; it should evince an intent on the part of the testator that the child in question should take no benefit under the will." 2 Alexander on Wills, sec. 636.

If it is to be determined from the will alone, whether or not the will omits the child is a question of law, and may be determined on demurrer; but, where extrinsic evidence is introduced, the question whether or not the testator intentionally omitted the child from the pro-

vision of the will becomes a question of fact, and must be determined by a jury on a trial of the cause. Wood-vine v. Dean, 29 N. E. 882; Carpenter v. Snow, 72 Am. St. Rep. 576.

*Hoyt, Norcross, Thatcher, Woodburn & Henley, S. H. Rosenthal, H. V. Morehouse,* and *John S. Orr,* for Respondents:

This court must decide whether or not testator adopted petitioner as his child, and whether or not he intentionally omitted her from the provisions of his will.

A child shall have the same share in the estate as though the testator had died intestate, unless it shall be apparent from the will that it was his intention to make no provision for such child. Rev. Laws, 6216. "The only object of the statute is to protect the children against omission or oversight. * * * The statute affords no protection if provision is not made for them. The inference follows that no provision was intended." Payne v. Payne, 18 Cal. 291; Terry v. Foster, 1 Mass. 146; Wild v. Brown, 2 Mass. 570; Wilder v. Goss, 14 Mass. 357; Coulam v. Doull, 133 U. S. 216; Gerish v. Gerish, 8 Or. 351; Estate of Callaghan, 51 Pac. 860; Woods v. Drake, 37 S. W. 109; Boman v. Boman, 47 Fed. 849; Allison v. Allison, 44 S. E. 904.

Parol testimony is admissible to ascertain whether or not the omission of a child from a will is intentional or unintentional. Coulam v. Doull, supra; Estate of Motts, 51 L. R. A. (N. S.) 645; Peterson's Estate, 140 Pac. 237. It conclusively appears from the will and from the surrounding circumstances that appellant was intentionally omitted from the will. "The cardinal rule of interpretation of a will is to ascertain the intention of the testator." Estate of Hartung, 39 Nev. 200; 40 Cyc. 1382, 1394; Stewart v. Jones, 131 Am. St. Rep. 608; Estate of Murphy, 137 Am. St. Rep. 115.

"In the interpretation of wills courts will look to the whole instrument." Bacon v. Michaels, 105 Pac. 1082.

By disposing of his entire estate to others testator showed his intent to omit petitioner from any inheritance. "That a testator may disinherit his heirs, by giving his estate to somebody else, cannot be doubted." Baisseau v. Aldridges, 27 Am. St. Rep. 595; Addington v. Wilson, 5 Ind. 137; McMichael v. Pye, 75 Ga. 192; Wright v. Hicks, 12 Ga. 156; Stennett v. Hall, 37 N. W. 332; Hoeb v. Hoeb, 61 N. W. 932.

If not in contravention of some established rule of law or of public policy, the intention of the testator must be ascertained and given effect. 40 Cyc. 1386; Estate of Hartung, 39 Nev. 200; Carver v. Wright, 109 Atl. 896; Rewis v. Rewis, 84 South. 93; Insurance Co. v. Dearborn, 109 Atl. 816; In Re Blodgett's Estate, 163 N. W. 907.

It is only when the language actually used by the testator will admit of no other reasonable construction that the court will declare it invalid or illegal. 40 Cyc. 1407; In Re Heywood's Estate, 82 Pac. 755; Husin v. Ellis, 93 N. E. 362; Clark v. Mack, 126 N. W. 632.

"Every word or phrase should be given effect and harmonize with the rest of the will, if possible to do so without destroying the general intention." 40 Cyc. 1408; Mittel v. Karl, 8 L. R. A. 655; Winter v. Dibble, 95 N. E. 1093; Walker v. Walker, 118 N. E. 1015; Burton v. Burton, 102 S. E. 282; Meins v. Meins, 123 N. E. 554; Porter v. Tracey, 162 N. W. 800; Harrington v. Cooper, 189 S. W. 667; Porter v. Union Trust Co., 108 N. E. 117.

The presumption is that the testator intended to dispose of his entire estate, and not to die intestate, and the will should be so construed, unless this presumption is clearly repealed by the provisions of the will or by evidence to the contrary. 40 Cyc. 1409; Wilmes v. Tierney, 174 N. W. 271; Federson v. Matthiesen, 170 N. E. 385.

The true construction of the will is that the testator intended to exclude from any substantial share in his estate any one not named in his will, whether a child or otherwise. In Re Miner's Estate, 180 Pac. 535. Appel-

lant was in the mind of the testator, who intentionally omitted her from his will. Coulam v. Doull, 133 U. S. 216.

Clear and unambiguous disposition of property to certain persons is recognized as a factor of the utmost importance in determining whether or not a testator intentionally omitted others from the provisions of his will. Coulam v. Doull, supra.

The court will not consider the words, "I do hereby declare that I have never been married and that I have no children," as surplusage and permit the will to fail. It is clear they were placed in the will for the purpose of disavowing the paternity of appellant, and of excluding her from participation in the estate of the testator. In Re Heywood's Estate, 82 Pac. 755; Clark v. Mack, 126 N. W. 632. If it appear that the testator intended to omit appellant from his will, she is not in the sense of the statute a pretermitted child. Osborn v. Bank, 4 N. E. 791; Hawhe v. Railroad, 46 N. E. 240; Peet v. Peet, 82 N. E. 376; Leonard v. Enochs, 17 S. W. 437; Brown v. Brown, 108 N. W. 180; Woods v. Drale, 37 S. W. 109; Smith v. Smith, 54 Atl. 1014; Smith v. Sheehan, 39 Atl. 332; Reaves v. Hager, 50 S. W. 760; Shackelford v. Washburn, 60 South. 318; In Re Lindsay's Estate, 18 Pac. 113.

By the Court, DUCKER, J.:

Appellant claims to be a daughter of the deceased, Matt A. Parrott, and an Indian woman, and that she is entitled to the sole distribution of his estate. She filed her objection to a petition for distribution by the executors of the estate, praying that the major portion of the estate be distributed in equal shares to the Rebecca Lodge No. 7 of Reno, Washoe County, Nevada, Mercy Wagstaff, a sister of the deceased, the children and grandchildren of Mrs. Jane Goodman, a deceased sister of said Matt A. Parrott, and to the children of another deceased sister, Helen Bateman, in accordance with the

terms of the last will and testament of the deceased, Matt A. Parrott. The objection reads:

"That the said Lucy Peggy Parrott Arzaga is the daughter of the said Matt A. Parrott, deceased, and a Washoe Indian woman named Peggy; that said Lucy Peggy Parrott Arzaga was born in the Indian camp just below the old county hospital on the south side of the Truckee River, in the eastern part of the city of Reno, county of Washoe, State of Nevada, about forty years ago, and is now, and for some years prior hereto has been continuously, and in fact during almost the entire period of her life, has been a resident of the county of Washoe, State of Nevada.

"That said Matt A. Parrott, in the county of Washoe, State of Nevada, and elsewhere, many times, publicly acknowledged that he was the father of the said Lucy Peggy Parrott Arzaga, and from the time of the birth of said Lucy Peggy Parrott Arzaga contributed food and clothing and sustenance and maintenance to the said Lucy Peggy Parrott Arzaga, and sent the said Lucy Peggy Parrott Arzaga to the Stewart Indian School near the city of Carson, in the State of Nevada, as the child of the said Matt A. Parrott and paid the expenses of the said Lucy Peggy Parrott Arzaga at said school and her support and maintenance during the time she attended said school, and on many and divers occasions in the State of Nevada publicly admitted to divers and sundry persons that he was the father of said Lucy Peggy Parrott Arzaga, and that she, the said Lucy Peggy Parrott Arzaga, was his child, and that he intended to raise, maintain, educate, and support the said Lucy Peggy Parrott Arzaga, all with the consent of the mother of said Lucy Peggy Parrott Arzaga and before the said Lucy Peggy Parrott Arzaga had reached the age of 12 years.

"That the said Matt A. Parrott died in the city of Reno, county of Washoe, State of Nevada, on the 22d day of November, 1919, and left estate therein as particularly set forth and described in said petition for

distribution, and that the said Matt A. Parrott was at the time of his death, and for more than fifty years prior thereto had been, a resident of the county of Washoe, State of Nevada.

"That the said Matt A. Parrott left a will and testament, dated October 24, 1919, a true copy of which said will and testament is hereto attached, marked Exhibit A, and made a part hereof, and that said will and testament was, by an order of the above-entitled court, duly and regularly admitted to probate in the above-entitled court on the 11th day of December, 1919.

"That the said Matt A. Parrott omitted in said will to provide for or to make any provision concerning the said Lucy Peggy Parrott Arzaga, and that it does not appear from the will or otherwise that such omission was intentional.

"Said Lucy Peggy Parrott Arzaga further alleges that the said Matt A. Parrott left no surviving wife or child, or children other than the said Lucy Peggy Parrott Arzaga, and that there are no relatives, heirs, or persons whomsoever who are entitled to take the property of the said estate in preference to the said Lucy Peggy Parrott Arzaga.

"That the said Lucy Peggy Parrott Arzaga is a married woman, the wife of one Manuel Arzaga, but that the said Arzaga, husband of said Lucy Peggy Parrott Arzaga, has no right, title, interest, or claim of, in or to the property of the said Matt A. Parrott, deceased, and that this proceeding concerns the sole and separate property of the said Lucy Peggy Parrott Arzaga.

"Wherefore said Lucy Peggy Parrott Arzaga prays that after the payment of all of the expenses of the administration and all of the just debts of estate of the said Matt A. Parrott, deceased, all of the rest, remainder, and residue of said estate be distributed to the said Lucy Peggy Parrott Arzaga, and for such other and further relief as to the court may seem meet and proper in the premises."

The copy of the will, so far as its contents have any bearing upon the questions to be determined on appeal, contains in paragraph 2 the following declaration:

"I do hereby declare that I have never been married and that I have no children."

After several minor devises are declared, the will concludes:

"6. I hereby direct that all of the rest, remainder and residue of my estate, real, personal and mixed, of every nature, kind and description wherever situate and however held, which is or may be subject to my testamentary disposition at the time of my death, shall be divided into four equal parts, and I hereby give, devise and bequeath one of said parts of my residuary estate to Nevada Rebecca Lodge No. 7 of the city of Reno, county of Washoe, State of Nevada; one of said parts to my sister, Mrs. Jane Goodman of Wayne County, New York; one of said parts to my sister Mrs. Ellen or Helen Bateman of Bedfordshire, England; and one of said parts to my sister Mercy Wagstaff of Colmworth, Bedfordshire, England.

"7. I hereby declare that I have not heard directly from any of my said sisters for several years, and it is my will, in the event that any of my said sisters shall be deceased at the date hereof or at the date of my death, that the portion of my estate which is hereby devised to such sister, or sisters, shall be distributed to the lineal descendants of such sister, or sisters, per stirpes and not per capita; but if any of my said sisters shall have died without lineal descendants, or in the event my executors shall be unable to ascertain the whereabouts of any of my sisters, or if dead, their lineal descendants within two years from the date of my death, it is my will that the share of any such sister, or sisters, shall be divided equally between my other sisters or their lineal descendants per stirpes and not per capita.

"8. I hereby nominate, constitute and appoint H. H.

Kennedy and Lee Hawcroft, both of Reno, Washoe County, Nevada, as executors of this my last will and testament."

The objection was demurred to by all of the devisees entitled to receive the major portion of the estate under the terms of the will, and a demurrer to the amended objection was filed by the executors. Motions to make the objection more specific and certain were also made.

By stipulation of the attorneys of the various parties the demurrer and the motion to make more definite and certain of the executors, directed to the amended objection, were considered as the demurrer and motion of all of the devisees above mentioned.

Collectively and in substance the demurrers are on the ground that the amended objection does not state facts sufficient to establish any right in the said Lucy Peggy Parrott Arzaga to receive any part or portion of said estate, in that it shows upon its face that her omission from the will was intentional, and contains no facts upon which it can be ascertained by the court that said Matt A. Parrott at any time publicly acknowledged said Lucy Peggy Parrott Arzaga as his daughter. It is unnecessary to state specifically the other objections raised.

The trial court sustained the demurrers on the ground that the amended objection was insufficient to show an unintentional omission of the said Lucy from the will, and overruled the demurrers and motions in other respects. The amended objection was dismissed, and from the order of dismissal said Lucy Peggy Parrott Arzaga appeals.

For convenience, the devisees and executors opposing appellant's claim will be referred to as respondents.

This appeal presents two questions for determination, namely: Are the facts stated in appellant's objection sufficient to show her adoption by the testator, Matt A. Parrott? and, Did he intentionally omit her from the provisions of his will?

1. As to the first question, counsel for appellant con-

tends that it cannot be considered on this appeal. Ordinarily the appellate court will not consider any errors that may have been committed against a respondent. Maher v. Swift, 14 Nev. 324; Moresi v. Swift, 15 Nev. 215; Dennis v. Caughlin, 22 Nev. 447, 41 Pac. 768, 29 L. R. A. 731, 58 Am. St. Rep. 761. It will look only to errors assigned by the appellant.

2. The rule is otherwise, however, if the complaint (or, as in this case, the objection) is so defective that it would not support any judgment in favor of appellant. South San Bernardino Land and Improvement Co. v. San Bernardino National Bank, 127 Cal. 245, 59 Pac. 609. Before appellant would be entitled to any judgment in this case, she must by a proper pleading allege sufficient facts to establish her status as an adopted child of the testator, by force of section 5833. The section reads as follows:

"The father of an illegitimate child, by publicly acknowledging it as his own, or receiving it as such, with the consent of his wife, if he is married, into his family, or otherwise treating it as his legitimate child, thereby adopts it as such; and such child shall, thereupon and thenceforth, be deemed, for all purposes, legitimate from the time of its birth."

3. We have therefore considered the question presented by respondents, and hold that her objection contains a sufficient averment of fact to bring her within the purview of the foregoing statute.

4. Was the appellant intentionally omitted from the will by the testator? The statutory provision involved is as follows:

"When any testator shall omit to provide in his or her will for any of his or her children, or for the issue of any deceased child, unless it shall appear that such omission was intentional, such child, or the issue of such child, shall have the same share in the estate of the testator as if he or she had died intestate." Section 6216, Revised Laws of Nevada.

We cannot accept respondents' contention that, in

determining the question before us, we may take into consideration certain facts in the objection admitted to be true by their demurrers. These are the circumstances surrounding appellant's parentage, from which, taken in connection with the provisions of the will, counsel infer that the testator was moved to purposely omit her from his will, on account of the disgrace which her acknowledgment would bring upon his good name. They contend that, as evidence dehors the will is admissible to determine the question involved here, these admitted facts must be given the same force and effect by this court.

If we were to conclude, which we cannot, that on the hearing of the demurrers the district court could have received and considered evidence aliunde, and perforce could have taken into consideration facts admitted in the objection, it is clear that the court would have been otherwise precluded from considering the circumstances of appellant's birth. Why? Because these facts are stated in the objection in connection with testator's conduct towards her and declaration of paternity only to establish her status as a legitimated child, which, together with the allegations showing her omission from the will, put in operation the statute under which she claims the estate, notwithstanding the will. They would necessarily be irrelevant for any other purpose, and a demurrer admits the truth only of well-pleaded facts. In the present condition of the case we must draw our conclusions solely from the provisions of the will.

5. It appears from the will that the appellant was omitted from it and the estate devised to the persons named in it. The statute which she has invoked by showing that she is the natural and adopted child of the deceased raises the presumption that her omission from the will was unintentional. Before this presumption can be overthrown and the contrary intention established in point of law, it must appear from the face of the will that the intention to omit appellant is expressed

therein or implied in language so strong as to render any other conclusion unreasonable. If the import of the language of the will is not plain enough to warrant such conclusion, the presumption raised by the law must prevail on this appeal, and the judgment of dismissal be reversed.

6. The large number of cases cited by counsel on either side and those we have investigated of our own accord are of little value when applied here. While it may have escaped our research, we have not been able to find a case where the language of the will is the same as the language upon which the question must turn in this case. On questions of mere construction, one case, unless in all respects similar to the case under discussion, cannot be regarded as an authority. In Re Stevens, 83 Cal. 330, 23 Pac. 379, 17 Am. St. Rep. 252. We may refer to In Re Stevens, supra, however, for support of the rule we adopt as to the extent to which the intention to omit from the will must appear from its language. The California court held, under a statute the same as ours, that the naming of a grandchild in a will with a legacy did not disclose an intention to omit his mother, who was not mentioned. Upon the point urged, that the will itself showed upon its face that the omission of the mother was intentional, the court said:

"As to this contention, we think that the significance of the decision of this court in Garraud's estate is that it must appear on the face of the will, and it must then appear from words which indicate such intention directly, or by implication equally as strong. Any other rule would lead to guesses or to inferences merely conjectural, which would be too unsubstantial to base a judgment on. We do not think we can say with any reasonable certainty that the words used in the will indicate that Mrs. Hubbard was in the mind of the testator when he wrote his will, and that he intentionally omitted to mention her. We think that the correct rule is that the words of the will must show, as above

pointed out, that the testator had the person omitted in his mind, and, having her so in his mind, had omitted to make any mention of her."

7. We are not able to say with the degree of certainty required by the rule we employ that the words of the will indicate that the testator intentionally omitted the appellant from its provisions. The only language in the will which can be said to favor such construction is that contained in paragraph 2:

"I do hereby declare that I have never been married and that I have no children."

We see nothing else in the will that can be used as a legitimate inference in this respect. The learned trial court, in a concise and able written decision, which we find in the record, places stress upon the particular and complete plan of distributing all of the property pursued by the testator, and the effect upon this plan if it was not intended by the clause in paragraph 2 to disinherit appellant. We do not attempt to summarize the reasoning of the court for fear of misstating it. The following, we think, taken from the opinion, will disclose it correctly. The court, after stating that it appeared from the objection that the deceased left no wife or child other than the said Lucy, continued:

"Bearing this fact in mind, the conclusion then becomes likewise irresistible that at the time deceased made his will, and inserted said clause in it, and then disposed of all his property with considerable detail to others, he had the said Lucy in mind and intended by said clause to disinherit her. Any other construction would render his whole will a nullity except for the purpose of naming his executors, for, if her contention be true, the others named in the will would inherit nothing. If such be not the true construction of the will, the court would be forced to take the extremely improbable view that a normal man of sound and disposing mind, and not under restraint or undue influence, stating in his will that he had never been married and had no children, and with considerable particularity

disposing of all of a large and valuable estate, not to a wife or children, but to others, who would take nothing if Lucy be a pretermitted child, did, through a mere oversight, perform such an important transaction entirely uselessly except for the nomination of his executors. At least the court would be forced to the position of saying that the question is so doubtful that extrinsic evidence should be received going to the intention of the testator at the time he made his will."

We think the scheme of distribution can have no bearing upon the question. It evidences nothing more than the interest of the testator to so dispose of his property. It is entirely consistent with the presumption raised by the statute that appellant was unintentionally omitted from the will. The same disposition would doubtless have been made if appellant had been forgotten by the testator, or if he had believed her dead, or for any reason did not have her in mind when he executed his will. How can we indulge an inference that, because he did not forget his sisters in making his will, he did not forget his child? In other words, his intent to dispose of his property in the manner in which he did in no wise tends to prove that he did not forget his daughter, or through some misapprehension omit her from his will, which considerations constitute the basis for the interposition of the statute.

"The only object of the statute is to protect the children against omission or oversight, which not infrequently arises from sickness, old age, or other infirmity, or the peculiar circumstances under which the will is executed." Payne v. Payne, 18 Cal. 291–302; Coulam v. Doull, 133 U. S. 216–233, 10 Sup. Ct. 253, 33 L. Ed. 596.

Counsel for respondents have cited Coulam v. Doull, supra, as authority for their contention that extrinsic evidence is admissible under the statute upon the question involved, and they claim also that in this decision and in the case it affirmed, Coulam v. Doull, 4 Utah, 267, 9 Pac. 568, the disposition of the property in the will was

recognized as a factor bearing upon the question of whether the omission from the will was intentional. We have read the case with attention, but do not understand that either court considered the clauses in the will bestowing on the wife all of the property of the testator as evidence tending to show an intentional omission of the children. The clauses of a will disposing of property to persons named might be so worded as to furnish evidence of an intention to omit a child from the testator's bounty, but the mere disposition of property to others, as in this case, can bear no such inference.

That the testator was of sound and disposing mind, and not under restraint or undue influence, we must assume, as the learned trial court did, but the utmost effect that we can give this condition is that he was competent to make a will and did so freely and voluntarily, and it has no tendency to show his state of mind concerning appellant. We cannot perceive how the matters which were regarded by the trial court as elements for consideration add any force to the clause in paragraph 2 of the will.

Counsel for respondents contend that the declaration in paragraph 2 of the will discloses an intention to omit appellant. They argue that, as the clause, "I have never been married," by necessary implication, negatives the parentage of legitimate children, the clause, "that I have no children," must have been put in the will for the purpose of disavowing the parentage of illegitimate children, and with the intention of omitting appellant from the will. Any other construction, they insist, will result in treating the latter clause as surplusage, and thus do violence to the rule that every word or phrase should be given effect, and harmonize with the rest of the will, if possible to do so without destroying the general intention. Giving full force and effect to the rule, we are carried no further than to conclude that testator intended to include illegitimate children in his declaration as to children. We cannot go further and declare

with the certainty required that the testator, when he disclaimed the parentage of any children, legitimate or illegitimate, had appellant in his mind and intentionally omitted her from the provisions of his will. There is too much doubt involved in such a construction. When the testator said, "I have no children," and it appears that he had a child, how can it follow as a conclusive deduction of reasoning that he did not forget his child?

Stress is placed by counsel for respondents upon the rule that the intention of the testator must be ascertained, if possible, and given effect. The intention of the testator as to the disposition of his property is expressed in clear and unambiguous language. He intended to dispose of his property as detailed in his will, but it is not possible to give effect to this intention by reason of the statute concerning pretermitted children in the absence of language in the will indicating clearly and unequivocally the intent to omit appellant from its provisions.

8.   It is urged that under a statute the same or similar to section 6216 evidence extrinsic is admissible to show whether a child or the issue of any deceased child was intentionally omitted from a will. While the question is not before us, we deem it advisable to state that the weight of authority supports this contention. See Coulam v. Doull, supra; In Re Peterson's Estate v. Eustance, 49 Mont. 96, 140 Pac. 237, Ann. Cas. 1916A, 716, and note on pages 718, 719.

The judgment of dismissal is reversed, and the case remanded.

COLEMAN, J., concurring:

I concur in the foregoing opinion. It is said that the use by the testator of the sentence, "I do hereby declare that I have never been married and have no children," is proof positive of the fact that he had his child in mind. This is the premise from which it is argued that the judgment must be affirmed. If we accept the above

premise as correct, affirmance of the judgment must inevitably follow. But I think it erroneous to assume any such premise. The only inference to be drawn from the sentence quoted is that the testator had the general subject of children in mind. It may be that he had the general subject of children in mind, and at the same time have forgotten that he had this particular child. If such can possibly have been the fact, how can we say that it appears from the face of the will that he did or that he did not forget her? The language of the will is not ambiguous; it is clear, definite, and certain; so devoid of ambiguity that it is not subject to construction. Testator sought to state two propositions: (1) That he had never been married; and (2) that he had no children. What can be clearer and more free from doubt? But simply because he made the two unambiguous statements can we say that it clearly appears from the face of the will itself that he had appellant in mind? Might we not as well assume, in the face of the admitted fact that the statement of testator that he had no children was not true, that he had in reality forgotten the existence of the child? Is it not as fair and reasonable to draw this inference as to draw the inference that he had the child in mind and intentionally failed to provide for her? If this be so, while there is no ambiguity in the language of the will, to use the words of Fuller, C. J., in Coulam v. Doull, 133 U. S. 216, 10 Sup. Ct. 253, 33 L. Ed. 596, "an ambiguity may be said to have been created by operation of the statute," as to whether the claimant was intentionally omitted. This being the situation, there is only one way in which the intention of the testator can be ascertained, and that is by a consideration of all the facts and circumstances surrounding the testator which can throw any light upon the question: Did the testator have the claimant in mind at the time he made the will?

This view is not in conflict with the rule declared by the Supreme Court of Missouri in Beck v. Metz, 25 Mo. 70, and adhered to in subsequent decisions (Pounds v.

Dale, 48 Mo. 270), wherein it was held that an allusion in a will to "our child or children" was sufficient to show that the testator had his children in mind, and that a failure to provide for them was intentional. The distinguishing feature between the two cases is that in the Missouri case the testator expressly alluded to his children, showing that he had not forgotten them, whereas in the instant case the testator states that he had no children, while the fact is that he did have a child.

If I am correct that an ambiguity exists, it follows that testimony may be heard to show the real intention of the party. As sagely said by Chief Justice Fuller in Coulam v. Doull, 133 U. S. 216, 10 Sup. Ct. 253, 33 L. Ed. 596:

"If it must appear upon the face of the will that the omission was intentional, the words inserted in the statute were superfluous, for, if it did so appear, the child could not take, notwithstanding the provision that in case of omission it should take, inasmuch as the latter provision was only inserted to give the omitted child a share, not against the intention of the testator, but because of the presumption of an oversight."

I am aware that in opposition to this view it will be said that the Supreme Court of California has held that oral testimony cannot be considered in arriving at the intention of the party, and that, as our statute was taken from California, we should follow the rule there laid down. In the first place, our statute was enacted in 1862, prior to its construction by the California court. Furthermore, as pointed out by my associate, the great weight of authority is contrary to that construction.

SANDERS, C. J., dissenting:

I dissent.

This proceeding is grounded upon a petition, improperly called "objection to petition for distribution" of an estate, filed in a probate proceeding on the part of Lucy Peggy Parrott Arzaga, a half-breed Indian woman, the

object of which is to establish her status as the legally adopted illegitimate daughter of Matt A. Parrott, deceased, and to obtain a decree adjudging her to be a pretermitted child of said deceased, who died testate in said county, and entitled to take the entire property of his estate as if the testator had died intestate.

Upon the filing of her petition, the executors and beneficiaries named in the will (which had been admitted to probate) interposed their defense to the petition by demurrer, and for grounds of demurrer alleged that the will of the deceased, appended to, exhibited with, and made a part of the petition, shows upon its face that the omission of the testator to provide for the petitioner was intentional. The court sustained the demurrer and rendered judgment of dismissal of the proceeding. The petitioner brings the case to this court upon appeal from said judgment.

In the state of the pleading, the defense to the proceeding was properly interposed by demurrer. Where the facts constituting a defense affirmatively appear on the face of the petition, the defense may be interposed by demurrer without the necessity of a plea or answer. 21 R. C. L. 505.

The petition is so framed as to raise the single inquiry of whether the testator died intestate as to appellant. By reason of the statute in regard to pretermitted children (Rev. Laws, 6216), both sides on this appeal seem to concede that, if there is any provision in the will to show that appellant was present to the mind of the testator when he wrote, or caused to be written, his will, the statute affords no protection if provision is not made for her. In Re Callaghan, 119 Cal. 573, 51 Pac. 860, 39 L. R. A. 689. It must, however, be understood that because of the policy of the law heirs cannot be disinherited upon mere conjecture, and when the testator intends to disinherit them he must indicate that intention clearly, either by express words or by necessary implication, imputing, not natural necessity, but so

strong a probability that an intention to the contrary cannot be supposed. Lynes v. Townsend, 33 N. Y. 561; 40 Cyc. 1412; 28 R. C. L., par. 190, p. 229. Where, however, the intention to disinherit an heir is expressed in plain language, or by necessary implication, it must be carried into effect. 40 Cyc. 1412. It is true the purpose of construction, as applied to wills, is to discover the intention of the testator. That intention, however, is not that which existed in the mind of the testator, but that which is expressed by the language of the will. 28 R. C. L., par. 174, p. 215. Applying these principles to the will in hand, what is the result? By the first clause the testator directed his executors to pay all his just debts and funeral expenses. The second clause, which has given rise to this controversy, is in the following words:

"I do hereby declare that I have never been married and that I have no children."

By the remaining clauses the testator makes complete disposition of his whole estate, which is said to be of the value of $50,000.

My associates are of the opinion that, looking to the will itself, the question of whether appellant's omission from the will was intentional or unintentional is so much involved in doubt that it cannot be judicially decided. I am impressed that they are driven to this conclusion by the arguments of counsel on both sides that clause 2 of the will, standing alone, unexplained and unqualified, does or does not show that appellant's omission was unintentional. As their opinions indicate that the case will have to be tried de novo, I shall, out of fairness to the parties, do no more than express my reasons for sustaining the will.

It is a well-known canon applicable to the construction of wills:

"That merely negative words are not sufficient to exclude the title of the heir or next of kin. There must be an actual, valid and effectual gift, to some other

definite object."    Lynes v. Townsend, supra; Rauch-fuss v. Rauchfuss, 2 Dem. (N. Y.) 273; Hitchcock v. Hitchcock, 35 Pa. 393; 2 Williams on Executors, p. 838.

There is no doubt that clause 2 is a negative expression, containing negative language, and that the testator made an actual, valid, and effectual gift of all his property to other definite objects. The language of the clause imports that it was inserted upon great deliberation, after meditation and reflection upon the subject of who and what were the objects and subjects of the testator's bounty. We are not concerned with the motive behind the clause. To ascertain its meaning and legal effect, it must be interpreted in connection with the context, and interpreted so as to receive some meaning and to be given some effect, rather than to be inoperative. It is not a capricious declaration, and is not, as is unwisely suggested, a pharisaical declaration to exalt the testator's virtue in life, or to shield his good name after death from his meretricious relation with an Indian woman, nor is it to be interpreted as a libel upon his own progeny.

The testator, being an unmarried man when he declared in his will that he had no children, could not possibly have had in mind any but illegitimate children. A bachelor cannot be the progenitor of any other class of children. As the appellant has brought herself within the class intended, and she being the only child reputed to the testator who fills the description of children intended by him, it furnishes strong evidence of the state of the testator's mind toward her, his only child, when he deliberately wrote into his will "I do hereby declare that I have never been married and that I have no children." In this situation, it is a mental or psychological impossibility for the testator to have negatived in his will the paternity of his own child without that child being brought to his recollection. As soon as he wrote the clause, he immediately proceeded to make an actual, valid, and effectual gift of all his property to others. My conclusion, therefore, is

that it is not merely to be presumed, but is inevitably implied, from the very act of inserting clause 2, supplemented by the disposition of his whole estate to others, that the testator designed by its negative language to exclude Lucy Peggy Parrott Arzaga from his will, and, in my opinion, the will should stand. But, as my associates have taken a different view of the subject, the judgment must be reversed.

### ON PETITION FOR REHEARING

*Per Curiam:*

Rehearing denied.